Brian TAYLOR, Plaintiff-Appellant,

v.

H. Michael NICHOLS, Robert L. Pinet, R. Michael Latimer, James Allen, Michael T. Allen, Joe Ferns, Jack E. Davis and Victor E. Warren, Defendants-Appellees.

No. 76–1275.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 17, 1977.

Decided June 30, 1977.

Barbara M. Vache, Kansas City, Kan., and Harold V. Matney, Ottawa, Kan. (Clifford R. Roth of Matney & Roth, Chartered, Ottawa, Kan., on the brief), for plaintiff-appellant.

David K. Fromme of Weeks, Thomas, Lysaught, Bingham & Mustain, Chartered, Kansas City, Kan. (Roger D. Stanton of Weeks, Thomas, Lysaught, Bingham & Mustain, Chartered, Kansas City, Kan., and George A. Lowe of Lowe, Terry & Roberts, Olathe, Kan., on the brief), for defendants-appellees H. Michael Nichols, Robert L. Pinet, R. Michael Latimer, James Allen and Michael T. Allen.

N. Jack Brown of Boddington, Brown & Unverferth, Kansas City, Kan., for defendants-appellees Joe Ferns, Jack E. Davis and Victor E. Warren.

Before LEWIS, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a Section 1983 civil rights action brought by a police officer. The lawsuit grew out of a traffic collision which occurred on January 7, 1975 in Ottawa, Kansas. The defendant-appellee, Michael T. Allen, collided with a stopped car. The plaintiff-appellant, the mentioned police officer, was one of the investigating officers.

On January 13, 1975, Michael T. Allen was apprehended by a police officer of Ottawa, Kansas. He was advised of the outstanding citation issued in connection with the auto collision and was told to accompany the officer to the station to sign an appearance agreement. This Michael T. Allen refused to do. According to the testimony of the officer, Allen stated that the police should wait until he felt it more convenient to go to the station. When this occurrence was reported to headquarters, the superior officer contacted appellant by radio and ordered him to apprehend and detain Michael Allen until the ticket could be brought to the point of detention for Allen to sign. When Allen was apprehended by the appellant, he refused to produce his driver's license and backed away from appellant, who grabbed him by the coat sleeve and moved him toward the police car. Allen refused to get in the car and appellant put him in by force. Allen then produced his driver's license. After that the superior officer came to the scene with the traffic citation. He delivered it to appellant, who explained it to Allen, who then signed the appearance agreement part. Allen left the patrol car, but as he did so he was overheard to say that the appellant had pointed a gun at him, that he had ruined his shirt, and that he did not think that such force was necessary. He also said that appellant had not heard the last of the incident.

Subsequently, Michael Allen's father retained the appellee, Latimer, an attorney, to represent his son. The next day after these occurrences, Michael Allen's mother filed a criminal assault and battery complaint on behalf of her son against appellant.

The police held an internal affairs investigation against Officer Taylor. Attorney Latimer represented Allen in connection with the internal affairs investigation. After the completion of the internal affairs proceedings and the exoneration of appellant, Latimer on or before February 3, 1975, discussed the criminal assault and battery case with the County Attorney, Pinet, who refused to file charges against the appellant. Pinet did, however, appoint Latimer as special prosecutor, but later requested that the County Commissioner do so. Latimer proceeded to bring criminal charges against appellant and had him arrested.

Under the relevant Kansas statutes, Chapter 19, Article 7, Section 19–717, the County Attorney lacked authority to appoint a special prosecutor. However, the County Commissioners under K.S.A. 19–723 did have such authority.

The County Commissioners appointed Latimer as the special prosecutor in accordance with the cited statute. Their affidavit states that it occurred on February 3, 1975. Taylor maintains that the correct date was February 27, the second day of trial. We regard this dispute as immaterial. Taylor was charged by Latimer, acting as special prosecutor, with assault and battery under Kansas law. Appellant was arrested, detained and finally released on personal bond. Trial was started on February 10. It was completed on February 27, at which time the appellant was acquitted.

On February 14, 1975, the instant civil rights action was filed by the appellant as plaintiff in the Federal District Court.

On February 11, 1976, the court granted the motion to dismiss on behalf of the defendants, treating it, however, as a motion for summary judgment because of the presentation of factual matter, exhibits and affidavits. In essence, the trial court ruled that the complaint failed to allege the deprivation of a substantial federal right and that the complaint was full of conclusions with respect to the alleged violation of the Fifth and Fourteenth Amendments. The court mentioned specifically that the alleged injury to the appellant's reputation was not actionable under the Civil Rights Act. Further, that the allegation of deprivation of a public right was insufficient. At most he had a temporary suspension with pay which did not constitute an absolute deprivation. The trial court concluded that the complaint failed to state a claim under Sections 1983, 1985 or 1986, 42 U.S.C.

Reduced to its lowest terms, the plaintiff's complaint is that there was a misuse of state process as a result of the improper appointment of attorney Latimer and the prosecution by Latimer of a criminal action which was entirely lacking in merit. It would appear that the plaintiff is complaining of abuse of process or malicious prosecution.

We must determine whether the trial court erred in granting summary judgment. This calls for a decision as to whether the plaintiff has under the pleadings and the record established a prima facie liability against the Judge, H. Michael Nichols; the County Attorney, Robert L. Pinet; the attorney, R. Michael Latimer; James Allen, the father of the boy who was arrested; and the young man who was arrested, Michael T. Allen.

The case against Latimer as the appointed prosecuting attorney is distinct and somewhat different from the cases against the three County Commissioners: Ferns, Davis and Warren. The difference is that Latimer as the appointed prosecutor is entitled to somewhat broader immunity than that enjoyed by Ferns, Davis and Warren, the Commissioners.

■ Michael T. Allen, whose conduct gave rise to the litigation, cannot be held liable under the Civil Rights Act for the reason that he did not act under color of state law. Section 1983 requires this. The same is true of the father, James Allen. The tort case of malicious prosecution is not coterminous in its elements with a civil rights suit based upon misuse of the process. True, the same facts could give rise to violations under both federal and state law, but color of state law would have to be present in order to have a civil rights case. Because of the lack of state action, the judgment dismissing the complaint as to the Allens must be and is summarily affirmed.

■ The acts of filing a claim and testifying at trial do not constitute state action. These are private acts. *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975).

We must consider the case of Ferns, Davis and Warren separately from that of Pinet and T. Michael Latimer. This is because the facts as well as the law applicable to Ferns, Davis and Warren differ substantially from the facts and law governing the Latimer and Pinet cases.

The trial court's judgment of dismissal was based, for the most part, on the insufficiency of Officer Taylor's claim under the Federal Civil Rights Act. We affirm the judgments of dismissal. We do so in some instances on grounds different from those adopted by the trial court.

## I.

Was the dismissal of Officer Taylor's case against attorney Latimer valid? We conclude that it was.

The legal issue is whether or not Latimer, a special prosecutor, is entitled to the same immunity that the county attorney would have. Latimer on or about February 3, 1975 approached the County Attorney, Pinet, and told him of his desire to have Taylor prosecuted. Pinet declined to do so. However, he appointed Latimer as special prosecutor. Later, it was learned that he did not have the authority to make such an appointment and that it had to be made by the Board of County Commissioners. Thereupon, the Commissioners signed the appointment. Meanwhile, on February 3, 1975, Latimer filed, on behalf of the State of Kansas, a criminal complaint charging Taylor with assault and battery of Michael Allen, an alleged violation of K.S.A. 21–3408 and 21–3412.

The relatively recent decision of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), decided the question whether a district attorney or prosecutor enjoys absolute immunity from a civil action resulting from discharge of his official duties. The Supreme Court held that he does. In so holding it cited the policy reasons for extending absolute immunity to the district attorney saying that he is called upon to make quick decisions and that his work is of the greatest importance to the public and that he would be handicapped severely if he did not have immunity of the same kind that is given to the judge. The Court made note of some limitations (not important to the present discussion).

The case in which this *Imbler* decision was rendered involved a murder prosecution and conviction. Pachtman was the district attorney. At the trial the death penalty was imposed, but later this was reduced to life in prison. After the trial, Pachtman wrote to the Governor describing evidence which he said had recently surfaced and which provided corroborating witnesses for the alibi which Imbler offered at the trial. This evidence tended to discredit the prosecution's eye witness, one Costello. Subsequently, Imbler filed a habeas corpus proceeding in state court alleging that the district attorney had suppressed evidence favorable to him. The California courts denied relief and the habeas corpus action was then filed in federal court. It contained the same allegations. Imbler succeeded in this federal court proceeding and the judgment of the district court was affirmed by the Ninth Circuit. As a result, Imbler was freed. He then brought a civil action against Pachtman seeking damages under 42 U.S.C. § 1983. The district court ruled in favor of Pachtman on the ground that he was immune. This was affirmed by the Court of Appeals for the Ninth Circuit. It was this case which came before the United States Supreme Court and which produced the decision on the scope of the district attorney's privilege. The Supreme Court held that the immunity was absolute. It did not express an opinion as to whether the immunity would extend to the prosecutor's activity as an administrator or as an investigator. It said:

> We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.

96 S.Ct. at 995. Footnote 33 to this statement recognizes that the prosecutor is acting as an advocate in proceedings preliminary to the actual prosecution. The footnote also recognized that the prosecuting attorney is required to make decisions on a wide variety of issues such as whether to present a case to a grand jury, to file an information, when to prosecute, whether to dismiss an indictment against particular defendants, the evidence to be presented, and obtaining, reviewing and evaluating evidence. The Court thus recognized the diffi-

culty of drawing a line between the functions of prosecuting and administering.

■ Unless it can be said that a special prosecutor is to be considered differently, that he is to be judged in a different light and under different principles than an official prosecutor, Latimer is entitled to the same protection that would have been enjoyed by Pinet had he not stepped aside. There is no reason that we can see to make a distinction between the permanent prosecutor and the special one. Therefore, we must conclude that Latimer enjoyed the same immunity that would have been available to Pinet. Hence, when he was making the decision to prosecute he would be entitled to the same immunity that he enjoyed when he was actually prosecuting since he was exercising the duties that were specifically referred to by the Supreme Court in *Imbler*. We are bound, therefore, to hold that he is entitled to the same protection that was extended to Pachtman in the *Imbler* case.

In sum, in the case at bar there are less compelling reasons for withholding immunity from Pinet and Latimer than were present in regard to Pachtman in the *Imbler* case. Yet even there the Supreme Court found that immunity applied fully with Justices White, Brennan and Marshall concurring specially and disagreeing with the conclusion that it should be absolute immunity in a case involving suppression of evidence such as in *Imbler*. (The concurring Justices refrained from dissenting only because they considered the evidence suppressed to be immaterial.)

\* \* \*

■ Pinet, of course, cannot be charged with being a participant in the action of malicious prosecution if it be such, for he was exercising prosecutorial discretion when he decided to refrain from prosecuting and recommended Latimer to the County Commissioners. Complaint is made that Pinet's effort to appoint Latimer was a nullity. We fail to see that this is relevant since the appointment of Latimer was validated shortly thereafter by the County Commissioners.

\* \* \*

■ Finally, dismissal against Judge Nichols was fully justified for the reason that he was unquestionably entitled to ab-solute immunity. *See Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

## II.

■ Did the trial court err in dismissing the claims against the three County Commissioners: Fern, Davis and Warren? We hold that the dismissal was proper not only on the ground assigned by the trial court, namely insufficiency of the plaintiff's claim; the court's action was justified as well on the basis that the suit was precluded by the immunity of the Commissioners.

In the first instance the Commissioners were not joined. It occurred only after they filed an affidavit stating that they had hired Michael Latimer to act as special prosecutor in the Taylor case at the request of County Attorney Pinet. A few days after this action was taken, the plaintiff moved to amend his complaint to add the Commissioners as defendants.

The allegations in the complaint were that the defendants-commissioners had conspired to initiate a state prosecution in bad faith for the purpose of prosecuting and imprisoning plaintiff. In truth, the complaint had already been filed and there are no facts in the complaint stating what the defendants did that constituted conspiring. On the other hand, the Commissioners submitted a new affidavit in connection with their motion to dismiss in which they stated that they did not participate in any decision to file charges against or to prosecute the plaintiff and that they did not exercise any supervision or control over the county judge, the county attorney or special prosecutor, all of whom were acting in their official capacities.

The district court treated the motion to dismiss filed on behalf of the Commissioners as a motion for summary judgment and granted it. Under Rule 56(e) it was incumbent upon the plaintiff to allege facts, if

there were any, showing that the participation of the defendants was more than that which they averred in their affidavit. In view of their default on this, it was proper for the trial judge to grant the Commissioner's motion to dismiss treating it as a summary judgment motion.

█ The plaintiff was also required to go beyond conclusory allegations in order to demonstrate that the Commissioners had acted in a manner which disqualified them from claiming protection of the immunity. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In *Scheuer* the Supreme Court recognized the qualified immunity available to officers in the executive branch of government saying that it varied depending upon the discretion of the officers and their responsibilities. The Court said that the existence of reasonable grounds for their belief coupled with good faith afford a basis for qualified immunity. 416 U.S. at 247–48, 94 S.Ct. 1683. In the *Scheuer* case these facts had not been developed as they have been in the record at bar, and so the cause was remanded for the purpose of determining whether the Governor of Ohio and his subordinate officers had acted within the scope of their duties under the laws and Constitution of Ohio and in good faith, but *Scheuer* does not rule out determination of the existence of immunity on summary judgment. *See* 416 U.S. at 250, 94 S.Ct. 1683. *See also Oakley v. City of Pasadena*, 535 F.2d 503 (9th Cir. 1976). In *Oakley* as in the case at bar there is a failure on the part of the plaintiff at the summary judgment stage to assert facts which created a factual issue as to the presence of good faith on the part of the defendants.

The district court in the case at bar acted properly in treating the motion to dismiss as a motion for summary judgment, and the trial court was correct in granting the summary judgment considering the state of the record. *Hill v. Trustees of Indiana University*, 537 F.2d 248, 251 (7th Cir. 1976). *Cf. Miller v. Shell Oil Co.*, 345 F.2d 891 (10th Cir. 1965).

Taylor failed to contradict the statements contained in the County Commissioners' affidavits that they had not participated in a decision to prosecute Officer Taylor; that they had not exercised control over any of the participating officials (in the prosecution); and that their participation was limited to acting on the recommendation of the County Attorney. Their presentation made out an assertion that they had acted in good faith. There is no suggestion in the record that these three defendants had any participation other than that of validating the appointment of attorney Latimer once it became apparent that the County Attorney lacked authority to make the appointment.

The case against these Commissioners was then both weak and lacking in meaning.

### III.

Does Taylor have a valid claim under 42 U.S.C. Section 1985(3)?

█ State action or color of state law is not essential to a claim under 42 U.S.C. Section 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 96–101, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In view of this, was summary judgment in favor of James Allen and Michael T. Allen proper? These two defendants could be liable under Section 1985(3) if they had conspired for the purpose of depriving Taylor or the class of persons to whom he belonged (in this case police officers) of equal protection of the laws or of equal privileges and immunities under the law, i. e. rights guaranteed by federal law or the federal Constitution.[1] *See Breckenridge, supra*, 403 U.S. at 102–03, 91 S.Ct. 1790; and *Doski v. M. Goldseker & Co.*, 539 F.2d 1326, 1333 (4th Cir. 1976).

---

1. To state a Section 1985(3) cause of action, the complaint must also state that one or more of the conspirators did or caused any act in furtherance of the conspiracy, whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *See Breckenridge, supra*, 403 U.S. at 103, 91 S.Ct. 1790.

The Section 1985 allegations fail here because the plaintiff has failed to make even a minimal showing that he was denied equal protection or equal privileges and immunities guaranteed by federal law or the federal Constitution. He has made no showing that other individuals have not been prosecuted in similar circumstances or that groups other than police officers have not been so prosecuted.

Inasmuch as the Section 1985 action is insufficient, the allegations under 42 U.S.C. Section 1986 also fail. A claim under Section 1986 exists for refusal to take positive action where the circumstances demand to prevent acts which give rise to a cause of action under Section 1985. In view then of this relationship, there cannot be a valid claim under Section 1986 unless there is also a claim under Section 1985. There being no valid Section 1985 claim, there can be no action under Section 1986. *See Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754.

Nor does plaintiff's allegation under 42 U.S.C. Section 1988 state a cause of action. That section is procedural and alone does not give rise to a cause of action. *See Reeves v. American Optical Co.*, 408 F.Supp. 297, 302 (W.D.N.Y.1976).

The judgment of the district court is affirmed.