Karen G. SILKWOOD, by the Administrator of her estate, William M. Silkwood, et al., Plaintiffs,

v.

The KERR–McGEE CORPORATION et al., Defendants.

No. CIV–76–0888.

United States District Court, W. D. Oklahoma.

Sept. 22, 1978.

James Ikard, Oklahoma City, Okl., and Daniel P. Sheehan, Washington, D. C., G. L. Spence, Casper, Wyo., for plaintiffs.

Wm. G. Paul, L. E. Stringer, John J. Griffin, Jr., of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Derrill Cody, Oklahoma City, Okl., for Kerr-McGee Corp., McGee, Kelly Colerax, Jorgensen, Kennedy, Kerrs, Love, Parks, Seale, Webb, Zitting, Dunn, Adkisson, King, Sinke, France, Reading, Marler, Welch and Gentry.

Don Manners, Manners, Grennan, Cathcart & Lawter, Oklahoma City, Okl., for Olson.

David Russell, Susie Pritchett, Asst. U. S. Atty., Oklahoma City, Okl., Mark F. Evens, Glenn V. Whitaker and David J. Anderson, Dept. of Justice, and Irving Jaffe, Acting Asst. Atty. Gen., Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., for Rosack.

Peter Clinton Moore, Moore & Dart, Norman, Okl., Stephen F. Rohde, Beverly Hills, Cal., and Richard L. Shencopp, Los Angeles, Cal., for Buz Hirsch.

## MEMORANDUM OPINION AND ORDER

THEIS, District Judge.

This matter comes before the Court on the motions of the individual Kerr-McGee defendants[1] for judgment on the pleadings and the motions of the F.B.I. defendants[2] and defendant Jacque Srouji, for summary judgment. Defendants maintain the first two counts[3] of plaintiffs' complaint fails to state a cause of action upon which relief can be granted under 42 U.S.C. § 1985(3) because: (1) the complaint fails to allege, and it cannot be implied, that there was some racial, or perhaps otherwise class-based discriminatory animus behind the alleged conspiracy; and (2) the complaint fails to allege or imply any form of state action, a violation of Thirteenth Amendment rights, or a violation of the right of interstate travel.[4] The F.B.I. defendants move for summary judgment on the first two counts and on any implicit Bivens[5] claims, arguing the complaint is deficient in the manner stated above, and further, that the F.B.I. defendants came on the scene only after the death of Karen Silkwood in November of 1974, that any alleged conspiracy would have terminated at the time of Silkwood's death, and that it was impossible for the F.B.I. defendants to have done anything that would have harmed Karen Silkwood during her lifetime either in her person or property, or in her having or exercising any right or privilege of a citizen of the United States.

After careful consideration of the complex legal issues presented by the motions, the Court concludes that Counts I and II of plaintiffs' complaint fail to state a cause of action and are therefore dismissed as to all defendants. The F.B.I. defendants are granted summary judgment on the Bivens aspect of plaintiffs' complaint, but are denied summary judgment as to Counts I and II.

## BACKGROUND

The complaint states that Karen Silkwood was an employee of the Kerr-McGee Corporation's Cimarron, Oklahoma, Nuclear Facility (hereinafter "Cimarron facility")

---

1. The term "individual Kerr-McGee defendants" refers to the following officers, directors, executives and employees of the Kerr-McGee Corporation named in the complaint as defendants solely in their personal capacities: Dean A. McGee; James J. Kelly; Peter Colefax; Earl M. Jorgensen; Edwin L. Kennedy; Breene M. Kerr; Robert S. Kerr, Jr.; F. C. Love; George B. Parks; J. B. Saunders; A. P. F. Seale; James E. Webb; R. T. Zitting; Parker S. Dunn; Wayne Norwood; Ronald Adkisson; Roy E. King; G. T. Sinke; J. Marler; G. France; James Reading; Fred Welch; and Weldon C. Gentry.

2. The term "F.B.I. defendants" refers to the following agents of the Federal Bureau of Investigation named in plaintiffs' complaint as defendants in their private as well as in their official capacities: Lawrence Olson; Theodore Rosack; and "One Named but Unidentified Agent of the Federal Bureau of Investigation."

3. This opinion will consider only the first two counts set forth in plaintiffs' complaint. Motions relating to the third count of the complaint which names as defendant only the Kerr-McGee Corporation will be considered in subsequent opinions and orders.

4. Because of the dispositive nature of this contention, the Court finds it unnecessary to reach defendants' arguments relating to the survivability of the action under Oklahoma law and to the jurisdiction of the National Labor Relations Board.

5. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Very simply, the Bivens case held the violation of a citizen's constitutional right by a federal officer gave rise to a cause of action for damages to a person injured by the unconstitutional conduct of the federal officer. In that case, the Fourth Amendment right to be free from unreasonable search and seizure was violated.

from August 3, 1972, to November 13, 1974. The first count of the complaint alleges that the individual Kerr-McGee defendants entered into a conspiracy in November of 1972 with the purpose of preventing Karen Silkwood and other Cimarron facility employees endeavoring to organize a labor union to improve their working standards from enjoying the equal rights, privileges and immunities of citizens under the laws of the United States and the State of Oklahoma, through force, violence, intimidation, surveillance, harassment, wiretapping and other forms of illegal conduct. Overt acts alleged to have been undertaken by the individual Kerr-McGee defendants against Karen Silkwood and other union organizers at the Cimarron facility include the following: (1) formulating, financing, directing, supervising and executing a plan to place Karen Silkwood and other union organizers employed at the Cimarron facility under surveillance so as to compile dossiers for the purpose of depriving them of their rights to privacy and to freely associate as guaranteed by the First and Fourth Amendments to the United States Constitution; (2) similarly undertaking a plan to place listening devices in private places and placing wiretaps on the telephones of Karen Silkwood and other union organizers in violation of privacy rights guaranteed by the First and Fourth Amendments; (3) hiring and directing operations agents to place Karen Silkwood and other union organizers under surveillance, to illegally enter the private domains of Karen Silkwood and other union organizers, and to harass Karen Silkwood and other union organizers by various means—including harassment of the freedom of movement and travel—for the purpose of preventing them from enjoying the equal protection of the laws entitling them to freely associate; (4) firing and transferring persons at the Cimarron facility as punishment for their exercise of First Amendment rights, and to prevent Karen Silkwood and other union organizers from enjoying the equal protection of the laws; (5) interfering with the right of Karen Silkwood and other Cimarron employees to communicate with the public news media by threats of firing, use of lie detector tests, and by orders and rules forbidding such conduct.

The F.B.I. defendants are alleged to have joined the conspiracy in November of 1974, and defendant Srouji is alleged to have joined in April of 1975, each with the knowledge of the previous overt acts, for the purpose of preventing knowledge of the overt acts from becoming known to any persons other than themselves. All defendants are alleged to have given false information to various federal investigative officials and to have falsified official reports for the purpose of depriving Karen Silkwood and other union organizers of the equal protection and enjoyment of the laws of the United States.

As a result of the alleged overt acts, the complaint states that Karen Silkwood and other union organizers employed at the Cimarron facility were damaged in that they were deprived of the equal protection of the laws and deprived of the privileges and immunities of citizens of the United States, including their rights to freedom of speech, freedom of association, freedom of assembly, freedom of movement and travel, their free access to the press, their right to privacy, their right to petition their government for a redress of their grievances, and their right not to be deprived of their life, liberty or property other than by the due process of law.

The second count of the complaint is identical to the first count except for two essential differences. First, the alleged conspiracy in the second count is stated to have been directed against Karen Silkwood and other employees of the Cimarron facility who had filed complaints against the corporation under the Atomic Energy Act. Second, the individual Kerr-McGee defendants are alleged to have entered into the conspiracy in October of 1974. Jurisdiction as to both Counts I and II is asserted under 42 U.S.C. § 1985(3), 28 U.S.C. § 1343, and the First, Fourth, Fifth and Ninth Amendments to the United States Constitution.

### SECTION 1985(3)

Counts I and II are predicated upon what has been called the Klu Klux Klan Act, a

provision of the Civil Rights Act of 1871, which provides as follows:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." [42 U.S.C. § 1985(3).]

The touchstone in any case involving a claim under § 1985(3) is the decision of the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), where the Court set forth the following as the necessary elements of a § 1985(3) claim:

"To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did or caused to be done, 'any act in furtherance of the object of conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" [403 U.S. at 102–103, 91 S.Ct. at 1798.]

The second element set forth above relating to the motivation of the conspirators which must be alleged and proven by a § 1985(3) claimant was further defined in the Court's decision in *Griffin* in light of the legislative history and the Constitution. Justice Stewart stated:

"It is thus evident that all indicators— text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.' [Citation omitted.] The constitutional shoals that would lie in the path of interpreting § 1985(3) as a *general federal tort law* can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection or *equal* privileges and immunities, means there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." [Id. at 101–102, 91 S.Ct. at 1798.]

The complaint before the Court satisfies the requirements of the first and third elements of a § 1985(3) action. Although defendants deny by answer and affidavit the allegations of a conspiracy and of overt acts, they concede the complaint alleges these essential elements. What defendants do dispute, however, is whether the class-based animus essential to a § 1985(3) claim is present in the complaint and whether the complaint alleges the deprivation of any of the rights or privileges of a citizen of the United States.

### CLASS–BASED ANIMUS

There is no allegation of racial animus or even of sex discrimination in this case. The class-based animus in Count I is alleged to

have been directed against union organizers employed at the Cimarron facility. In Count II, the class-based animus is alleged to have been directed against employees of the Cimarron facility who had filed complaints against their employer under the Atomic Energy Act. In their arguments and briefs, plaintiffs stress that these constitute two separate and distinct classes—Karen Silkwood having been a member of each—and that both classes were "targeted" by defendants for deprival of the equal protection of the laws and for deprival of the members' privileges and immunities as citizens of the United States. Plaintiffs contend that a labor union or any other formal or informal organization gathered together to better enable persons to more effectively exercise rights guaranteed by the First Amendment could constitute a class for the purposes of § 1985(3), no matter how narrowly defined, if they were "targeted" by a private conspiracy in the manner alleged by the complaint.

Defendants respond that the classes alleged in Counts I and II are small, not readily identifiable, and have constituencies depending upon circumstances which are changeable. It is contended that the alleged classes are defined by the activities of the members which are distinctly individual characteristics, rather than by intrinsic characteristics or qualities such as race, ethnic origin, sex or religion. To hold that such classes are within the ambit of § 1985(3) would be to fashion that section into a general federal tort law, according to defendants.

■ Under the law of this Circuit it is clear that the complaint must show some racial or class-based invidiously discriminatory animus behind the actions of the conspirators. *Atkins v. Lanning,* 556 F.2d 485, 489 (10th Cir. 1977); *Ward v. St. Anthony Hospital,* 476 F.2d 671, 676 (10th Cir. 1973). In *Griffin* the Supreme Court emphasized:

"The motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus." [403 U.S. at 102, n. 10, 91 S.Ct. at 1798.]

The Ninth Circuit has further explained this requirement in the following manner:

"The statutory action is restricted to injuries inflicted upon the victim because of his status as a member of an identifiable class; the statutory 'purpose to deprive of equal rights' requirement is inferred from the racial or other class motivation underlying the tortious conduct.

.  .  .  .  .

Under *Griffin,* we think *the class status providing the motivating animus must be created by a fact other than the possession of the right deprived—otherwise virtually every conspiratorial deprivation of a primary right would be actionable under § 1985(3)* .  .  . " [Emphasis added.] [*Lopez v. Arrowhead Ranches,* 523 F.2d 924, 927–928 (9th Cir. 1975).]

Although the Supreme Court was not called upon in *Griffin* to determine whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under § 1985(3), it did cite the remarks of Senator Edmunds [6] during the congressional debate of the passage of the Civil Rights Act of 1871. 403 U.S. at 103, n. 9, 91 S.Ct. 1790. Plaintiffs, in their brief, also direct the Court's attention to that portion of the debate. Asked whether the section dealing with conspiracy to obstruct justice [now codified as § 1985(2)] was intended to embrace the states, Senator Edmunds replied:

"Certainly, referring to the 'equal and impartial course of justice' mentioned in the second section of the third page. This obstruction of the equal and impartial course of justice, however, must, under the provisions of this bill, go so far as to deny and withhold from citizens of the United States that equality of protection in seeking justice which the Constitution of the United States gives them. We do not undertake in this bill to interfere with what might be called a private conspiracy growing out of a neighborhood feud of one man or set of men against another to prevent one getting an indict-

6. Senator Edmunds was a Republican from Maine.

ment in the State courts against men for burning down his barn; but, if in a case like this, it should appear that this conspiracy was formed against this man because he was a Democrat, if you please or because he was a Catholic, or because he was a Methodist, . . . then this section could reach it." [Cong.Globe, 42d Congress, 1st Sess. 567 (1871) (remarks of Senator Edmunds).]

Certainly, it is clear that the 1871 Congress did consider the possibility that § 1985 would be applied in general to classes of citizens other than racial groups and in particular to religious groups. Since *Griffin,* federal courts have not hesitated in extending the protection of § 1985(3) to religious groups. See *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir. 1973) (employment discrimination against a member of the Jewish faith); *Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971) (disruption of religious services at a predominantly white Catholic parish). Similarly, several federal courts have found allegations of sex discrimination to be actionable class-based bias under § 1985(3). See *Reichardt v. Payne,* 396 F.Supp. 1010 (N.D.Cal.1975); *Pendrell v. Chatham College,* 370 F.Supp. 494 (W.D. Pa.1974); *Stern v. Massachusetts Indemnity & Life Ins. Co.,* 365 F.Supp. 433 (E.D.Pa. 1973). But, *cf., Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir. 1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976).

On the other hand, most courts have not perceived class-based animus for purposes of § 1985(3) in cases involving allegations of classes that were not readily recognizable or that tended to be defined by one particular activity or by plaintiff's individual situation and that were not traditionally among those groups protected by the civil rights laws. See *Bova v. Pipefitters & Plumbers Local 60, AFL–CIO,* 554 F.2d 226 (5th Cir. 1977) (non-union employee); *McLellan v.*

*Mississippi Power & Light Co.,* 545 F.2d 919 (5th Cir. 1977) (en banc) (bankrupts); *Bricker v. Crane,* 468 F.2d 1228 (1st Cir. 1972) (physicians who had testified in malpractice cases), cert. denied, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973); *Jacobson v. Industrial Foundation of the Permian Basin,* 456 F.2d 258 (5th Cir. 1972) (persons filing workman's compensation claims); *Western Telecasters, Inc. v. California Federation of Labor, AFL–CIO,* 415 F.Supp. 30 (S.D.Cal.1976) (employees of a "non-union" employer entity); *Taylor v. Nichols,* 409 F.Supp. 927, 936 (D.Kan.1976) (policemen), aff'd. on other grounds, 558 F.2d 561 (10th Cir. 1977); *Smith v. Armstrong,* 396 F.Supp. 753 (N.D.Tex.1975) (persons whose families have been disrupted by a particular religious cult), aff'd. without opinion, 524 F.2d 1231 (5th Cir. 1975); *Furumoto v. Lyman,* 362 F.Supp. 1267, 1286 (N.D.Cal.1973) (non-white opponents of racism and disrupters of university operations for social or political reasons). But see, *e. g., Glasson v. City of Louisville,* 518 F.2d 899, 912 (6th Cir. 1975) (persons displaying posters or signs critical of President Nixon during a motorcade), cert. den., 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Cameron v. Brock,* 473 F.2d 608 (6th Cir. 1973) (supporters of an incumbent sheriff's election opponent); *Azar v. Conley,* 456 F.2d 1382 (6th Cir. 1972) (members of a white middle class family harassed by police);[7] *Brown v. Villanova University,* 378 F.Supp. 342 (E.D.Pa. 1974) (students exercising their First Amendment rights);[8] *Franceschina v. Morgan,* 346 F.Supp. 833 (S.D.Ind.1972) (persons engaged in First Amendment activities at migrant labor camp).[9]

In the context of the first count's allegation of a class-based animus directed against union organizers employed at the Cimarron facility, a case of particular interest is *Arnold v. Tiffany,* 359 F.Supp. 1034 (C.D.Cal.1973). There, plaintiffs who were

---

**7.** All three of the cases cited from the Sixth Circuit included a component of state action, and *Glasson* and *Azar* contained claims held actionable under 42 U.S.C. § 1983.

**8.** The Court held there was a substantial probability plaintiffs would prevail on the merits and therefore granted a preliminary injunction.

**9.** The *Franceschina* opinion suggests but does not determine the presence of state action.

attempting to form and maintain an association of independent newspaper dealers, brought an action under § 1985(3) against the publisher, seven of its employees, and a dealer. The animus was alleged to have been directed against the class of newspaper dealers who had independent contracts with the newspaper. The Court dismissed the complaint for failure to state a claim upon which relief could be granted, and provided the following rationale:

"A close reading of *Griffin* leads this Court to conclude that the words 'class-based, invidiously discriminatory animus' refer, at most, to that kind of irrational and odious class discrimination akin to racial bias—such as discrimination based on national origin or religion. The complaint alleges no such discrimination.

"Furthermore, for this Court to conclude that § 1985(3) was intended to embrace the class alleged here—a newspaper dealers' trade association—would, in effect, amount to treating that section as a general federal tort law." [Id. at 1036.]

On appeal, the Ninth Circuit upheld the trial court's dismissal on the basis that the appellants were injured because of their activities in attempting to maintain a dealer association and not because they were members of the class alleged, i.e., newspaper dealers. The Court of Appeals therefore found it unnecessary to reach the "class" question on which the district court based its decision. *Arnold v. Tiffany*, 487 F.2d 216, 218 (9th Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974).[10]

With respect to the second count's allegation of a class-based animus directed against employees of the Cimarron facility who had filed complaints against their employer under the Atomic Energy Act, a case of interest is *Hughes v. Ranger Fuel Corp.*, 467 F.2d 6 (4th Cir. 1972). Plaintiffs were engaged in efforts to "turn in" violators of the 1899 Refuse Act and alleged that they had been assaulted while they endeavored to photograph the pollution of a river by defendants. The district court had dismissed the case without an opinion, and the Fourth Circuit affirmed on the basis that plaintiffs had failed to allege class-based motivation on the part of the defendants as required in a § 1985(3) claim. Judge Russell states:

"The action of the defendants was directed at the plaintiffs as individuals because they were engaged in attempting to photograph them (the defendants) and their activities on that particular occasion, not because of any animus against them as members of some class or race. There is no averment in the complaint that the defendants attacked the plaintiffs because the latter were environmentalists . . . . ; the allegations of the complaint are specific that the assault was sparked solely by the instant reaction of the defendants to the fact that the plaintiffs were seeking to photograph the defendants, clearly for the purpose of prosecuting them under the Refuse Act. Theirs was a purely spontaneous act, not alleged to be a part of any general pattern of discriminatory action directed to any class, as was the situation in *Action v. Gannon* [450 F.2d 1227 (8th Cir. 1971).]" [Id. at 10.]

**10.** Judge Tuttle of the Fifth Circuit, sitting by designation, continues in *Arnold* with the following comments:

"The element (4b) necessary for a cause of action under *Griffin* requires the appellants to be 'deprived of having and exercising any right or privilege of a citizen of the United States.' [403 U.S. at 103, 91 S.Ct. at 1799.] The appellants assert a deprivation of their first amendment right of association. Since the first amendment has not been held to be a restraint on *private* conduct, only on state action, the appellants suggest two novel arguments for sustaining their right. First, the

appellants would argue that the elimination of the state action requirement by *Griffin* extends the right of association under the first amendment as well as state action in Section 1985(3) suits. Second, appellants assert that the right of association is one of that bundle of rights held by all persons who are *national citizens*. Since we have affirmed the district court's decision on the class-based animus limitation, it is unnecessary for us to reach these issues or the question of the constitutional power of Congress to enact such a statute." [Footnotes omitted.] [Id. at 219.]

Plaintiffs concede that both classes alleged are narrowly defined and tied to the particular circumstances of the claimed conspiracy. In *Bricker,* the plaintiff was denied leave by the district court to amend his complaint to state that he was a member of a class of physicians that had been discriminated against because of their testimony in malpractice cases. Judge McEntee observed:

"While the court denied his motion for leave to amend, this additional allegation would not, in any event, suffice to state a cause of action under § 1985(3). We recognize, of course, that we are generally required to treat the allegations of a complaint as true for purposes of a motion to dismiss. In the instant case, however, appellant has done no more than flatly assert his membership in a novel class which is neither readily recognizable nor among those traditionally protected by the Civil Rights Act. He has alleged no facts supporting the existence of such a class and admitted at oral argument that he might be the only class-member in New Hampshire. Under these circumstances, we hold that appellant has not sufficiently alleged class-based discrimination to state a cause of action under § 1985(3). See *Jacobson v. Industrial Foundation of Permian Basin, supra.*" [Id. at 1232–1233.]

■ Having fully considered the authorities set forth above as well as others recited by counsel in their briefs and arguments, this Court finds itself in agreement with the numerous courts who have rejected claims of class-based animus allegedly directed toward groups which did not tend to exist prior to the occurrence of the events set forth in the complaint and which tend to be defined by one particular activity or by plaintiff's individual situation. While animus directed against groups such as Jehovah's Witnesses, persons of Japanese origin, or Democrats, may provide the necessary motivation element, animus directed against employees at the Cimarron facility who were organizing a union or who had filed complaints against their employer under the Atomic Energy Act, does not. If the Court were to hold otherwise, § 1985(3) could become applicable to all conspiratorial interferences with the rights of others, as there are no bounds upon the ingenuity of counsel in pleading novel and diverse classes to fit every conceivable situation. Under the Supreme Court's construction of § 1985(3) in *Griffin,* this Court is constrained to hold that Counts I and II of the complaint do not allege an invidiously discriminatory animus and are therefore not actionable under 42 U.S.C. § 1985(3).

## DEPRIVATION OF RIGHTS OR PRIVILEGES

■ Plaintiffs' complaint does not allege that Karen Silkwood was injured in her person or property by the overt acts specified in the complaint, but does allege that she was deprived of the equal protection of the laws and of her privileges and immunities as a citizen. Defendants suggest that since there is no component of state action alleged or suggested by the complaint, the interests of Karen Silkwood which are alleged to have been infringed by the overt acts do not fall within those protected by § 1985(3), a portion of a law passed to assist in the enforcement of the provisions of the Fourteenth Amendment. It is noted that the commands of that amendment are addressed only to the several states or to those acting under color of their authority. Defendants further contend that the Thirteenth Amendment-based, private conspiracy theory of recovery, permitted by the Supreme Court in *Griffin* is not available to plaintiffs, as it is not alleged that plaintiffs or Karen Silkwood are Negro citizens, descendants of former slaves, or that they have been the victims of racially discriminatory private action.

There is a line of Seventh Circuit cases which strongly support defendants' contentions. In *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir. 1972), the Court rejected § 1985(3) claim brought by a white lawyer with a successful criminal practice, who alleged that defendants had conspired to deny him access to a private office building as a

tenant. The Court held that where there was no state involvement in the discrimination, an arbitrary business discrimination against lawyers engaged in the practice of criminal law did not deprive plaintiff of the equal protection of the laws within the meaning of § 1985(3). Judge (now Justice) Stevens stated:

> "The breadth of . . . [§ 1985(3)'s] coverage is yet to be determined, but three categories of protected rights have been plainly identified. *Griffin* gives express [protection] to a black citizen's Thirteenth Amendment rights and to his federal right to travel interstate; the title of the statute expressly identifies the third category, namely, rights protected by the Fourteenth Amendment. We think the § 1983 cases make it clear that in this third category a 'state involvement' requirement must survive *Griffin*.
>
> "Since plaintiff is white and claims no abridgement of his constitutional right to travel, the holding of *Griffin* does not control this case." (Footnotes omitted.) [Id. at 195.]

The case of *Cohen v. Illinois Institute of Technology*, 524 F.2d 818 (7th Cir. 1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), involved a claim of sex discrimination and conspiracy brought by a former female faculty member at a private university. The lower court's dismissal of the §§ 1983 and 1985(3) claims was affirmed on the grounds that with respect to the § 1983 claim, the complaint failed to sufficiently allege state action, and with respect to the § 1985(3) claim, the complaint failed to allege that the conspiracy had deprived plaintiff of a federally protected right. Judge (now Justice) Stevens made the following observations concerning the § 1985(3) claim:

> "Quite properly, Count II omits any allegation that the individual defendants acted under color of state law. For there is no statutory requirement of State participation or support for the conduct of the individual conspirators proscribed by § 1985(3). There is, however, a requirement that the conspiracy deprive the plaintiff of a federally protected right.

That requirement would be satisfied if I.I.T. were a State university, or if the constitutional right of the plaintiff at stake were one that is entitled to protection against anyone, rather than merely protection from impairment by a state.

. . . . .

> "It is . . . well settled that the Fourteenth Amendment is not a protection against purely private interference and may be violated only by the action of a state. See, *e. g., Shelly v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed.2d 1161. . . . The rationale of *Dombrowski* is controlling here.
>
> "We recognize, as plaintiff argues, that there is language in *Griffin* which may indicate that the statute will be construed to cover any invidiously discriminatory private conspiracy, and that other circuits, without careful consideration of the issue, have stated that state action is never an element of a § 1985(3) claim. We are satisfied, however, that the distinction between the two kinds of state involvement that may be relevant in civil rights litigation—first, whether the defendant has acted under color of state law, and, second, whether plaintiff's federal right is merely assertable against the State—requires consideration of the state action in cases bottomed on an alleged violation of the Fourteenth Amendment.
>
> "We have no doubt that discrimination which is invidious because of racial motivation would be covered since the protection of the Thirteenth Amendment is not merely against state action. But since the Court in *Griffin* so carefully refrained from holding that any discrimination which would be actionable if practiced by the State is for that reason also actionable under § 1985(3), we remain convinced that our reasoning in *Dombrowski* is a correct explanation of why the statute does not broadly 'apply to all tortious, conspiratorial interferences with the rights of others'." (Citation and footnotes omitted.) [Id. at 828–829.]

The following year the Seventh Circuit heard the consolidated appeals in two

§ 1985(3) cases which had been dismissed for failure to state claims upon which relief could be granted. The cases involved a dismissed white high school teacher who claimed that a conspiracy had deprived him of his First Amendment rights to speak out on behalf of blacks and women, and a non-striking employee who had been assaulted in the course of an alleged conspiracy that deprived him of his right to freely associate with non-union workers and the right to attend and perform his job.

In *Murphy v. Mount Carmel High School,* 543 F.2d 1189 (7th Cir. 1976), the Court held that a § 1985(3) cause of action for injury arising out of a purely private conspiracy to interfere with freedom of expression, without state involvement, is not constitutionally supportable. Chief Judge Fairchild stated:

"The guaranties of the First Amendment run only against the federal government, not private interference. By incorporation into the due process clause of the Fourteenth Amendment, these guaranties also run against the state. . . .

"Appellants assert, however, that section 5 of the Fourteenth Amendment provides Congress with the power to enact legislation to implement the guaranties of this Amendment. Section 1985(3), they argue, was written to provide a cause of action against private conspirators invading an interest protected from state impairment by the Fourteenth Amendment. "Neither the legislative history of the Amendment nor any holding of the Supreme Court supports this proposition.

. . . . .

"Faced with these precedents and inconclusive legislative history, we do not find in section 5 the constitutional authority which would permit Congress to enact a right of action against private parties, without any state involvement, for infringement of interests which are protected from state impairment by the Fourteenth Amendment." [Id. at 1193–1194.]

One other court of appeal has reached a similar conclusion. In *Bellamy v. Mason's Stores, Inc.,* 508 F.2d 504 (4th Cir. 1974), the Fourth Circuit upheld the dismissal of a § 1985(3) claim brought by a plaintiff who alleged that he had been fired by the defendant private employer for his membership in the Klu Klux Klan, and thus had been deprived of his First Amendment right of free association. Judge Craven offered the following analysis of the claim:

"Section 1985(3) creates civil liability against any persons who conspire to deprive any other person or class of persons of the 'equal protection of the laws, or of equal privileges and immunities under the laws.' The language of the statute tracks the language of the fourteenth amendment, and we know that included within it is a wholly private conspiracy to deny Negro citizens the right of travel and rights based upon the thirteenth amendment. *Griffin v. Breckenridge,* supra. But we think the language of equal protection chosen by the 1871 Congress cannot be interpreted to mean that persons who conspire without involvement of government to deny another person the right of free association are liable under this statute. This is so because the right of association derives from the first amendment—itself framed as a prohibition against the federal government and not against private persons, and because the incorporation doctrine has never been extended by the Supreme Court to apply to private persons." [Id. at 506–507.]

See also, *Doski v. M. Goldseker Co.,* 539 F.2d 1326 (4th Cir. 1976).

To the contrary, however, is the decision of the Eighth Circuit in *Action v. Gannon,* supra. There, the Court found jurisdiction under § 1985(3) to support the District Court's injunction against two organizations, the Black Liberation Front and Action, and their members, prohibiting them from continuing to disrupt the religious services of a predominantly white Catholic parish. The Court had no difficulty in concluding that the first section of the Fourteenth Amendment protected the plaintiffs' First Amendment rights of freedom of assembly and worship. Addressing the issue of whether those rights are protected only against state action, Judge Heaney stated:

"We think not. We believe that Congress was given the power in § 5 of the Fourteenth Amendment to enforce the rights guaranteed by the Amendment against private conspiracies.

"We reach this conclusion with some trepidation because a number of decisions of the Supreme Court, during and shortly after the Reconstruction period, are frequently quoted as laying down the unqualified rule that 'if federal civil rights legislation is directed at merely "private acts," ' it must be denounced as unauthorized by the Fourteenth Amendment and hence unconstitutional unless some alternative constitutional authority for it can be established.

"Notwithstanding these early decisions, we feel the 1966 decision of the United States Supreme Court in *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239, requires that we sustain the exercise of constitutional power here. We believe in doing so, we reach the result intended by the sponsors of the Fourteenth Amendment.

.        .        .        .        .

"While the Court in *Griffin* left the door open for a reexamination of *Guest,* we do not believe that it will reject the majority views expressed therein." [Id. at 1235–1236.]

▊ The Court's research unveils no subsequent Court of Appeals decision adopting the Eighth Circuit's holding in *Action.*[11] It was expressly considered and rejected by the courts in *Dombrowski, Bellamy, Cohen* and *Murphy,* supra. The Court is aware that a number of opinions have expressed the view in dicta that state action is not essential to a claim under 42 U.S.C. § 1985(3) in light of *Griffin.* It appears, however, that these statements were not made or fully considered in the context of the narrower issue of claims that assert as injury solely a deprivation of rights or privileges of a United States citizen.[12] It is clear after *Griffin* that in actions for injury to persons or property, state or federal action may not be a necessary element to a § 1985(3) claim. It is also clear, however, that in actions for a deprivation of rights protected from infringement solely by state or federal authorities, some state or federal action that infringes on plaintiffs' rights or results in unequal treatment may be necessary to state a claim.

With respect to *United States v. Guest,* supra, a case involving 18 U.S.C. § 241, the criminal analogue to § 1985(3), Judge (now Justice) Stevens offered the following analysis in *Dombrowski,* as follows:

"The Court sustained the indictment of private citizens who had allegedly conspired to deny Negro citizens their right to equal utilization of public facilities operated by the State of Georgia. It is a fair distillation of the four opinions filed in that case to state that, although there was disagreement within the Court on the question whether defendants' private conduct would have been proscribed if there had been no cooperative action by state officers, all members of the Court recognized the need for state involvement in the provision of facilities to which the victims of the conspiracy were denied equal access. In short, the right secured by the Equal Protection clause of the Fourteenth Amendment is a right to protection against unequal treatment by a state." [Id. at 195–196.]

In *Cohen,* Judge (now Justice) Stevens offered this additional observation regarding the application of *Guest* to § 1985(3):

"It is clear that a private conspiracy to cause the plaintiff to receive unequal treatment from the State, or from a State agency, would violate § 1985(3)." (524 F.2d at 828, n. 27.)

Plaintiffs contend that rights set forth in the First Amendment are among the rights, privileges and immunities of citizens of the

---

11. The panel opinion in *Westberry v. Gilman Paper Co.,* 507 F.2d 206 (5th Cir. 1975), was ordered vacated and withdrawn prior to rehearing en banc by the Fifth Circuit because it appeared that the matters giving rise to the cause became moot. It is of no precedential value.

12. See *Taylor v. Nichols,* 558 F.2d 561, 567 (10th Cir. 1977).

United States and argue that they are no more dependent upon the Fourteenth Amendment than is the right to travel interstate recognized in the *Griffin* decision. The exercise of First Amendment rights is said to be protected from federal retaliation by the First and Fifth Amendments, from state retaliation by the Fourteenth Amendment, and from retaliation by private conspiracies by § 1985(3), enacted by Congress under its "power to protect by appropriate legislation." Thus, plaintiffs have argued in open court for a transposition of § 1985(3) into a cause of action for any private conspiratorial conduct that would also be actionable under § 1983, if undertaken by state officers or agents. This would render actionable virtually any private conduct that impairs an individual's speech, religious exercise or free association. To follow plaintiffs' proposition, however, would be to moot the line of Supreme Court cases that necessitate a finding of state action in § 1983 civil rights claims. Under plaintiffs' theory, these cases could be properly pleaded under § 1985(3), provided a conspiratorial element is present. None of the authorities cited by plaintiffs, most of which are discussed above, can be said to support this rather sweeping proposition. Even the opinion of the Eighth Circuit in *Action* rested its conclusion on the premise that Section 5 of the Fourteenth Amendment had given the Congress the power to enforce the right guaranteed by that amendment against private conspiracies.

■ Having thoroughly considered the authorities discussed above, as well as others recited by counsel in their extensive briefs and arguments, this Court finds the reasoning of the Fourth and Seventh Circuits compelling as it relates to the interests protected by § 1985(3). Aside from the absence of constitutional support for the position advocated by plaintiffs, this Court is persuaded that every controversy involving an alleged conspiratorial retaliation against persons exercising First Amendment rights should not sound a cause of action under § 1985(3). Under the blueprint established by the Constitution, most private tortious conduct is left to state regulation. To the extent that private conduct in retaliation for the exercise of First Amendment rights is not tortious, it is difficult to perceive how the private conduct may be penalized without impinging on the rights of the defendants. If changes need to be made in the laws, they should be accomplished by legislative means when constitutional authority exists for such action, and not by judicial fiat.

■ Thus, even if plaintiffs had alleged an invidiously discriminatory animus, their complaint would fail to state a complaint upon which relief can be granted because there is alleged no component of state action.[13]

## *BIVENS* CLAIMS

■ On the face of the complaint it is not clear whether the F.B.I. defendants are alleged to have entered into the alleged conspiracy before or after the death of Karen Silkwood, inasmuch as Counts I and II allege that they joined the conspiracy "in November of 1974." During oral argument on the motions before the Court, Mr. Sheehan, counsel for the plaintiffs, stipulated that the F.B.I. defendants had no involvement in this case until after the death of Karen Silkwood.

13. The majority in *Griffin* held, with the sole reservation of Justice Harlan, that the right to travel interstate is "among the rights and privileges of national citizenship" and is "assertable against private as well as governmental interference." *Griffin,* 403 U.S. at 105–106, 91 S.Ct. at 1800. That right is therefore within the "power of Congress to protect by appropriate legislation" from private infringement. Id. at 106, 91 S.Ct. at 1800. Plaintiffs here do not allege, nor have they claimed or argued that any overt act deprived Karen Silkwood of her right to travel interstate. See *e. g. Baer v.* *Baer,* 450 F.Supp. 481, 492 (N.D.Cal.1978). Plaintiffs' attempt to argue that all First and Fourth Amendment rights are similarly "assertable against private as well as governmental interference," however desirable, is unfounded on the law and unpersuasive. As noted above, this interpretation would render virtually every tortious act an infraction of constitutional dimensions. This Court is bound to follow the Constitution as presently written and interpreted. It is not free to write a new Bill of Rights, notwithstanding plaintiffs' invitation.

It is therefore apparent that the F.B.I. defendants could not have violated the constitutional rights of Karen Silkwood during her lifetime. Accordingly, the F.B.I. defendants' motion for summary judgment on the *Bivens* aspect of plaintiffs' complaint should be granted. See *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1975).

## TERMINATION OF THE CONSPIRACIES

As a corollary matter, the F.B.I. defendants maintain that they are entitled to summary judgment as to Counts I and II of the complaint because any conspiracy alleged under § 1985(3) would have terminated at the death of Karen Silkwood as a matter of law. It is argued that a civil conspiracy cannot exist without an overt act which causes injury to plaintiff and that the conspiracy therefore terminated when Karen Silkwood could no longer be injured by any act of the defendants. No authority is cited for this proposition.

■ Plaintiffs respond that § 1985(3) makes all conspirators liable for civil damages resulting from the overt acts of any co-conspirator which have injured the plaintiff. It is clear that the statute makes no exceptions for conspirators who did not personally commit any overt act or who joined the conspiracy after the occurrence of the overt acts which injured plaintiff. Plaintiffs stress that they are not seeking damages for anything but the alleged overt acts which injured Karen Silkwood during her lifetime. It is also clear that conspiracy liability has been held to extend to persons who participated only in the concealment of the overt acts where it can be shown that they had full knowledge of the conspiracy and its unlawful purpose. See *Hudspeth v. McDonald*, 120 F.2d 962 (10th Cir. 1941).

■ The Court is unpersuaded by the F.B.I. defendants' arguments that a § 1985(3) conspiracy is different from a criminal conspiracy in that it must terminate as a matter of law upon the death of the plaintiff. Where a conspiracy contemplates a continuity of purpose and a continuation of the performance of acts in furtherance of its express objectives, that single conspiracy continues in operation at law until there is a showing that the conspiracy has ended. See *United States v. Etheridge*, 424 F.2d 951 (6th Cir. 1970). Accordingly, the F.B.I. defendants' motion for summary judgment on the grounds that it was impossible as a matter of law for them to have adopted the objectives of the conspiracy, should be denied.

## CONCLUSION

The motion of the F.B.I. defendants for summary judgment on the *Bivens* aspect of the plaintiffs' complaint is hereby granted. The motion of the F.B.I. defendants for summary judgment on Counts I and II is hereby denied.

Counts I and II of the plaintiffs' complaint are hereby dismissed as to all defendants for failure to state a claim upon which relief can be granted. Plaintiffs' pending motions relating to discovery under Counts I and II are rendered moot.