James **AASUM**, Plaintiff-Appellant,

v.

**GOOD SAMARITAN HOSPITAL et al.,**
**Defendants-Appellees.**

**No. 75–2883.**

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1976.

---

Glenn H. Prohaska (argued), Portland, Ore., for plaintiff-appellant.

Jack L. Kennedy (argued), Portland, Ore., for defendants-appellees.

Before TRASK and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

TRASK, Circuit Judge:

Appellant, Dr. James Aasum, is a chiropractic physician licensed by the State

---

* Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

Board of Chiropractic Examiners to practice his profession under the laws of the State of Oregon. Appellees are the Good Samaritan Hospital, the hospital's administrator, Mr. James R. Mol, and the 1971–72 members of its board of directors. Good Samaritan Hospital is a private non-profit corporation accredited by the Joint Commission on the Accreditation of Hospitals.[1] The hospital has received federal funds for building and construction through the Hill-Burton Act, 42 U.S.C. § 291 *et seq.*, and is subject to inspection for health and safety by the Oregon State Board of Health.

For approximately ten years prior to July 1971, Dr. Aasum had been referring his patients to Good Samaritan's clinical laboratory for laboratory tests. On July 12, 1971, Mol, the hospital administrator, issued a policy directive stating that the use of the hospital's clinical laboratory facilities were to be limited to members of the hospital medical staff and to physicians licensed by the Oregon State Board of Medical Examiners. The directive had the effect of closing the clinical laboratory facilities of Good Samaritan to chiropractic doctors, including appellant, and of necessity requiring them to use other available facilities. The directive was in response to a call to Mol from the State Board in an unrelated matter. After receiving an opinion from the Joint Commission on the Accreditation of Hospitals, the hospital's board of directors approved the directive.

The plaintiff brought this action for injunctive relief and for damages as a result of the claimed unlawful discrimination in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. The trial court determined that there was a sufficient claim of state action and injury to the plaintiff to invoke jurisdiction but no violation of section 1983. Dr. Aasum appeals.

 At the outset we note that the hospital is organized as a private institu-

tion. Private conduct "however discriminatory or wrongful" is not proscribed. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13, 63 S.Ct. 836, 92 L.Ed. 1161 (1948)). It is only when the asserted discriminatory conduct is of constitutional dimension and results from action under color of state law, that the jurisdiction of the district courts attaches, 28 U.S.C. § 1343, and it is only when the State has "significantly" involved itself with invidious discrimination that the prohibition results. *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). In compliance with the admonition of *Moose Lodge No. 107, supra*, 407 U.S. at 172, 92 S.Ct. at 1971, we "sift [the] facts and weigh [the] circumstances" to solve the problem now presented to us.

Before doing so we note that while section 1983 is not limited in application to cases of discrimination by virtue of race or color, a "less onerous" test has been applied to cases involving those ingredients and a "more rigorous" standard applied for other claims. *Weise v. Syracuse University*, 522 F.2d 397, 405 (2d Cir. 1975); *Jackson v. Statler Foundation*, 496 F.2d 623, 629 (2d Cir. 1974). There is no suggestion of racial discrimination in this instance; therefore, the "more rigorous" standard shall be applied.

Appellant cites several examples of claimed intrusion by the State of Oregon into Good Samaritan's affairs. He directs our attention to the fact that by regulation of the Oregon Department of Human Resources (Reg. 23–126) a general hospital is required to have a governing body legally responsible for the general conduct of the hospital. This board is composed of seven members. Three of the seven members are appointed from the public at large—one by the Corvallis City Council, one by the Ben-

---

**1.** The Joint Commission on the Accreditation of Hospitals is a private voluntary organization composed of the American Medical Association, the American Hospital Association, the American College of Physicians, and the American College of Surgeons. (R.T. at 7–8).

The accreditation requirements of the Joint Commission represent the highest possible standards. *Id.* at 8. Standards call for the medical staff to be composed of those licensed to practice medicine, osteopathy, or dentistry. *Id.* at 10.

ton County Commissioners, and one by the President of Oregon State University. Appellant points to the fact that each of these public institutions obtains its basic authority from the State of Oregon, and thus argues that the action of the board is in fact the action of the State.

■ Appellant misinterprets the function of these public institutions in their relation to the hospital. None of the three has any management duties or responsibilities. They do not select one of their number to sit on the board to effectuate any governmental policy. Their function is solely to select persons in the public sector so that a wide representation of responsible members may be on the board. We find no state action in the manner in which board members are selected.

■ Appellant also points out that the hospital has been the recipient of federal funds under the Hill-Burton Act[2] and that it receives both state and federal tax advantages as a non-profit corporation. We have held that the receipt of such funds plus tax exemptions as a non-profit corporation do not constitute state action under section 1983. *Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.*, 507 F.2d 1103 (9th Cir. 1974); *Jackson v. Norton-Children's Hospitals, Inc.*, 487 F.2d 502 (6th Cir. 1973).

■ Another factor relied upon by the appellant as an indication of state action is the requirement for inspection of private hospitals by the State Board of Health. State Boards of Health are concerned with maintenance of general health standards in many businesses and occupations. They look at restaurants, hotels, and service establishments just as fire departments look at public gathering places with the public safety and welfare as their concern. Such an inspection has only a remote connection with a hospital's management policies. It has little or no connection with staff requirements or limitations on facility usage. This is not the pervasive intrusion by the State which connotes state action within

section 1983. *Cf., Moose Lodge No. 107 v. Irvis, supra,* 407 U.S. at 176–77, 92 S.Ct. 1965.

The trial court found, however, that Mr. Mol, the hospital administrator, did receive a telephone call from someone at the office of the Oregon Board of Medical Examiners which recommended that the hospital not extend the use of its facilities to a physician not licensed to practice medicine in Oregon. This call did not concern appellant, Aasum, but as a result, the board of directors approved a resolution which was broad enough in scope to deny to appellant the use of the hospital's facilities. The trial court found this recommendation of the board to be state action sufficient to invoke the jurisdiction of section 1983.

■ The court continued, however, to point out that the discrimination which resulted was not the invidious type of discrimination which the Constitution prohibits and section 1983 was designed to redress. We agree. Classifications which have a rational and substantial relation to the objects of the legislation which has created them are not in violation of the Fourteenth Amendment.

"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

The district court pointed out that,

"Oregon law distinguishes between several professions practicing different systems of treating disease, including physicians, dentists, podiatrists, and chi-

**2.** 42 U.S.C. § 291 *et seq.*

ropractors. The authority for licensing health care facilities, which involves distinguishing between these professions, resides with the Health Division of the Department of Human Resources. This responsibility has been delegated to the governing body of each hospital.

"Good Samaritan's Board of Directors has exercised this authority in accordance with the State's classification scheme, by limiting the practice of medicine which the hospital permits to the system of treatment recognized by licensed physicians and dentists. The Joint Commission on Accreditation of Hospitals also recommends that hospital medical staffs be limited to fully licensed physicians, dentists and podiatrists. It does not approve chiropractors. Mr. Mol wrote to the Commission on Accreditation to ask if the continued usage of Good Samaritan's laboratory by chiropractors would affect the hospital's accreditation. The response indicated that this practice was unacceptable to the Commission. Defendants contend that this discrimination between physicians and chiropractors is reasonable because it is based on classifications created by state law that are rationally related to the purpose of providing adequate health care for the state. They also believe that it was reasonable to discriminate between these groups in order to protect Good Samaritan's accreditation, by limiting the use of the hospital's laboratory to licensed physicians and dentists." (Footnotes omitted.)

We agree. It was not necessary in order for appellant to practice his profession that he use the facilities of Good Samaritan Hospital. Other laboratory facilities are available to him. If the hospital is required to extend its laboratory facilities to appellant, it may be required to extend the use of other facilities and jeopardize its accreditation. Similarly, demands upon its facilities may be made by other groups. Surely this is not constitutionally mandated.

■ We find with the trial court that the directive of which appellant complains was not directed at him particularly or to chiro-

practic physicians as a class. It was designed primarily to protect the hospital's general accreditation and, in its view, to maintain the standards required by its by-laws. The restriction of the use of its clinical laboratory is therefore not a violation of 42 U.S.C. § 1983 and the judgment of the trial court is affirmed.

Judgment Affirmed.