Gregory W. PHILLIPS and Paula J. Phillips, Plaintiffs,

v.

Katherine FISHER, Wayne Fisher, Roy Barnes, Kari Snyder, Dennis Phelps, Charles L. Davis, Jr., Michael J. Unrein, J. Franklin Hummer, Robert Thurnes, Laura Thurnes a/k/a Elnora Thurnes, Capital City Moving & Storage, Inc., and Bekins Van Lines, Defendants.

No. 77–4145.

United States District Court, D. Kansas.

Oct. 12, 1977.

---

Fred W. Phelps, Topeka, Kan., for plaintiffs.

Thomas E. Wright, Topeka, Kan., for Phelps, Davis, Unrein and Hummer.

Charles S. Fisher, Jr., Topeka, Kan., for Barnes, Snyder, Robert Thurnes, Laura Thurnes, Capital City Moving & Storage, Inc. and Bekins Van Lines and Fishers.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a civil rights action which comes before the Court upon defendants' motions to dismiss. The complaint alleges that jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1343(3), and 42 U.S.C. §§ 1981, 1985(2), 1985(3), and 1986.

The factual allegations contained in the complaint [see appendix] reflect that at some unknown time in the past plaintiffs moved from California to Topeka. During the move, some of plaintiffs' belongings were lost by the moving company plaintiffs hired. This transaction has generated state court litigation (apparently three separate lawsuits by these plaintiffs against the defendants) which is ongoing. The defendants are apparently the movers of plaintiffs' belongings, or their attorneys.

The essence of the plaintiffs' claim is that defendants (1) lost plaintiffs' belongings while moving them, and (2) conspired to prevail in the resulting state court litigation by committing perjury, falsifying evidence, and threatening witnesses. Paragraph # 2 of the complaint alleges that plaintiff Gregory Phillips is a black man and plaintiff Paula Phillips is a white woman, and that the defendants committed the alleged wrongs "because Gregory is black and because Paula is white, and because plaintiffs are married to each other . . ."

In deciding whether to grant motions to dismiss, we must "take the allegations of the complaint at face value" [*California Transport v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972)] and construe all "allegations of the complaint favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). We must not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Though we are willing to give the plaintiffs the benefit of every doubt in judging a motion to dismiss, we shall not hesitate to dismiss a complaint which clearly does not state a cause of action. As Judge O'Connor recently noted in *Taylor v. Nichols,* 409 F.Supp. 927, 932 (D.Kan.1976), *aff'd* 558 F.2d 561 (10th Cir. 1977):

> A dispute regarding the alleged deprivation of such a constitutional right is necessary because it is an express prerequisite of federal jurisdiction under 28 U.S.C. § 1343. . . . It should be clear, however, that the standard for dismissal set forth in *Conley, et al.,* does not become operative unless a privilege or right secured by the Constitution is identified and put into issue by the allegations of the complaint; that is, *if* the denial of a specific constitutional right is alleged, the action should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."

We have examined plaintiffs' complaint and detect no valid allegation of an identifiable constitutional right and find no basis for a cause of action under the Civil Rights Acts.

■ Plaintiffs' first attempt to obtain jurisdiction is pursuant to 28 U.S.C. § 1343(3). A plain requirement of that section is that defendants must have acted under color of state law. *Aasum v. Good Samaritan Hospital,* 542 F.2d 792, 794 (9th Cir. 1976). Such state action is not alleged. It is clear that the non-attorney defendants did not act under color of state law simply by being involved in, or testifying in state court litigation. *Taylor v. Nichols, supra* 558 F.2d at 564, *citing Grow v. Fisher,* 523 F.2d 875 (7th Cir. 1975). Similarly, attorneys who participate in state court litigation do not act under color of law. As this Court recently noted in *Brown v. Chaffee,* No. 77–4133 (D.Kan., 10/4/77, unpublished):

> While private attorneys are often spoken of as "officers of the court," *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, [95 S.Ct. 2004, 44 L.Ed.2d 572] (1975), it has long been the rule that acting in such capacity they are not "under color of law" so as to give rise to liability under § 1983. *Waits v. McGowan,* 516 F.2d 303 (3d Cir. 1975); *Jones v. Jones,* 410 F.2d 365 (7th Cir. 1969); *Meier v. State Farm Mut. Auto Ins. Co.,* 356 F.2d 504 (7th Cir. 1966); *Byrne v. Kysar,* 347 F.2d 734 (7th Cir. 1965), *cert. den.* 383 U.S. 913, [86 S.Ct. 902, 15 L.Ed.2d 668] (1966); *Rhodes v. Meyer,* 225 F.Supp. 80 (D.Neb.1963), *aff'd* 334 F.2d 709 (8th Cir. 1964), *cert. den.* 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964); *Skolnick v. Martin,* 317 F.2d 855 (7th Cir. 1963); *Cooper v. Wilson,* 309 F.2d 153 (6th Cir. 1962); *State ex rel. Purkey v. Ciolino,* 393 F.Supp. 102 (E.D. La.1975); *Ehn v. Price,* 372 F.Supp. 151 (N.D.Ill.1974); *Morrow v. Ingleburger,* 67 F.R.D. 675 (S.D.Ohio 1974); *Dreyer v. Jalet,* 349 F.Supp. 452 (S.D.Tex.1972); *Hamrick v. Norton,* 322 F.Supp. 424 (D.Kan.1970), *aff'd* 436 F.2d 940 (10th Cir. 1971).

In their responsive brief, plaintiffs assert that "the jurisdictional statute (§ 1343) is to be given as broad and extensive an application as 42 U.S.C. § 1981 *et seq.* This statement implies that the "under color of law" requirement does not apply to § 1343, for it does not apply to 42 U.S.C. § 1981. However, the case which plaintiffs cite for this proposition, *Blue v. Craig,* 505 F.2d 830 (4th Cir. 1974), refers to § 1983, which does require "state action", not to § 1981. (505 F.2d at 839).

■ A valid claim of racial discrimination is a prerequisite to a cause of action under 42 U.S.C. § 1981. *Melanson v. Rantoul*, 421 F.Supp. 492, 499–500 (D.R.I.1976) (and cases cited therein). Similarly, a claim of some class-based discriminatory animus is an essential element of a claim under 42 U.S.C. § 1985(3) [*Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970)], and under that portion of 42 U.S.C. § 1985(2) which follows the semicolon. *Smith v. Yellow Freight Systems, Inc.*, 536 F.2d 1320, 1323 (10th Cir. 1976); *See Lessman v. McCormick*, No. 77–4154 (D.Kan., 9/20/77, unpublished). Racially discriminatory intent would certainly constitute the class-based discriminatory animus that is required under either § 1985(3) or § 1985(2). Failure to adequately plead a claim of racial discrimination would constitute a bar to assertion of any claims under § 1981, 1985(3), or the latter portion of § 1985(2). Whether plaintiffs have adequately pled their claim of racial discrimination is a question to which we shall turn shortly.

■ That portion of § 1985(2) which precedes the semicolon contains no "equal protection" language and therefore may not require any showing of class-based discriminatory animus. This clause prohibits two or more persons from conspiring to disrupt proceedings of "any court of the United States". Since plaintiffs claim only that defendants have subverted *state* court proceedings, they have not stated a claim under this portion of § 1985(2). *Shaw v. Garrison*, 391 F.Supp. 1353, 1370 (E.D.La.1975), *aff'd* 545 F.2d 980 (5th Cir. 1977).

■ Finally, plaintiffs' complaint endeavors to state a claim under 42 U.S.C. § 1986, but unless plaintiffs state a valid cause of action under § 1985, no § 1986 claim will lie. *Taylor v. Nichols, supra*, 558 F.2d at 568, *citing Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

■ We now turn to the critical question which must be addressed in this opinion: Do plaintiffs adequately plead a claim of racial discrimination so that they may state claims under §§ 1981, 1985(2) and 1985(3)? What this case boils down to is the question of whether a complaint, which states facts from which no inference of racial discrimination can reasonably be drawn [see attached appendix], may be said to adequately state a cause of action under §§ 1981, 1985(2), and 1985(3) merely by the addition of a conclusory allegation such as is contained in paragraph # 2 of plaintiffs' complaint. This Court has recently been faced with this precise question in two other actions filed by the law firm representing plaintiffs in this action. We have answered the question in the negative.

In *Gastion v. Scott*, No. 77–4129 (D.Kan., 8/29/77, unpublished), plaintiffs alleged facts which indicated that two competing groups of attorneys were in a dispute over who would represent the black plaintiffs with a potentially valid claim for a large sum of money in ongoing state court litigation. Plaintiffs' attorneys (there and here) were the second set of counsel and alleged that the first counsel had been incompetent and had conspired with defendants' attorneys to block representation by second counsel because plaintiffs were black.

In *Steele v. Bunten*, No. 77–4152 (D.Kan., 10/4/77, unpublished), it was alleged that defendants had altered a signature on some loan papers so that the plaintiff father's signature, rather than that of his son who actually took out the loan, would appear thereon. It was further alleged that defendants had harassed plaintiff in an attempt to persuade him to pay the loan after his son defaulted.

In both *Gastion* and *Steele*, as here, plaintiffs were apparently dissatisfied with either the outcome or the progression of state court litigation. In both cases, as here, the specific factual allegations contained in the complaint contained no hint of racial motivation underlying the defendants' actions. In both cases, as here, plaintiffs attempted to obtain federal court jurisdiction by making totally conclusory allegations of racial discrimination. In *Steele* we addressed the

question of whether in the context of factual allegations which contained no indication of racial discrimination, a blanket averment of such discrimination is sufficient to state a civil rights cause of action. We wrote:

> The remaining applicable portions of § 1985(2) and § 1985(3) require a claim of class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970); *Smith v. Yellow Freight System, Inc.*, 536 F.2d 1320, 1323 (10th Cir. 1976). Plaintiffs attempt to bring their cause of action under these sections and 42 U.S.C. § 1981 by virtue of the following allegations in paragraph 2 of their complaint:
>
>> "Plaintiff Thomas is a black man married to plaintiff Peggy who is a white lady, and because Thomas is black and because Peggy is white, and because plaintiffs are married to each other, among other reasons, defendants have conspired to and have violated plaintiffs' civil rights based on race as the animus . . ."

We must seriously question this asserted causative nexus between race and the asserted alteration of the financial documents. As we said in *Gastion v. Scott*, Case No. 77–4129, order entered August 29, 1977:

> "The mere fact that plaintiffs are black does not automatically entitle them to claim that anything that has happened to them has happened *because* they are black. The averments of racial discrimination which appear in the complaint are totally conclusory. Nothing appears in plaintiffs' factual allegations which would support any inference of racial discrimination other than the mere fact that plaintiffs are black. The mere fact that defendant might think they could *succeed* in defrauding plaintiffs because defendants perceive plaintiffs to be [uneducated blacks] in no way indicates that such is the reason why defendants wish to defraud them in the first place."

We think the same reasoning is applicable in the present case. In paragraph 5 of the complaint plaintiffs claim that the acts of defendants were "motivated by the inordinate greed for financial gain." This is a plausible, indeed logical, explanation for the acts of defendants if they indeed occurred. We are satisfied that Congress in enacting the statutes here invoked did not intend to provide a federal forum, and special cause of action, for members of minority groups who have suffered as individuals wrongs no different in nature, quality, or motivation from those suffered every day by members of the populace at large. Is the right to be free from false claims of creditors one "which under similar circumstances would have been accorded to a person of a different race?" *Easley v. Blosson*, 394 F.Supp. 343, 344 (S.D.Fla.1975). The Civil Rights Acts were enacted not to discriminate in favor of minorities but to prevent discrimination against them, not to make, but to prevent, a different rule for blacks than for whites. *Watkins v. U. S. Steelworkers of America, Local 2369*, 516 F.2d 41 (5th Cir. 1975); *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974).

We do not say today that a plaintiff who seeks relief from alleged racial discrimination must allege facts which inescapably lead to the finding of a race-based animus on the part of a defendant. There are situations where the facts alleged themselves lead to a reasonable inference that the motive behind a defendant's actions may have been race. For example, if a black man is refused service in a restaurant, an allegation that the cause thereof was racial prejudice squares with the common experience of men in everyday life, and the causative inference is a logical one to draw. On the opposite end of the continuum is the situation where the wrong committed is not of a sort which is likely to be motivated by race. If a black man is arrested fleeing the scene of a bank robbery, it does not comport with the common experience of men to infer that the motive or cause for his arrest is his race; other apparent motives on the part of the actor so predominate as to make inferences of

racial discrimination laughable. The Court cannot shut its eyes to the world beyond the bench. Does a man who is inclined by avarice to forge business documents, thereby acquiring money not rightfully his, succumb to the overriding impulse to promote the badges of slavery the instant he victimizes a black citizen? "Although plaintiff makes conclusory allegations in the language of the cited statutes, he alleges no facts which indicate either a claim of racial discrimination or any violation of equal protection of the laws." *Kerckhoff v. Kerckhoff,* 369 F.Supp. 1165, 1166 (E.D.Mo.1974).

The same questions which we asked in *Steele* may be asked with some force here. Is the "right" to have your furniture moved without loss one "which under similar circumstances would have been accorded to a person of a different race?" Do defendants who, fearing loss of a state court civil suit, conspire to win that lawsuit fraudulently, succumb to the overriding impulse to promote the badges of slavery simply because the victims of the fraud are black? We think not, believing that a black plaintiff may not magically transform state court litigation into the subject of a federal civil rights action merely by alleging the fact of his race.

In response to the motions to dismiss filed by defendants, plaintiffs filed a motion for leave to file an amended complaint. The only change proposed by the amendment is to add 28 U.S.C. § 1331 as a jurisdictional basis for this action. Plaintiffs state that this statute grants us jurisdiction because this lawsuit invokes interpretations of federal statutes and of the Constitution. The only federal statutes involved are the Civil Rights Acts, and those have already been discussed and rejected as a basis for plaintiffs' claims. As for the Constitution, plaintiffs state that this action cannot be dismissed because "the deprivation of constitutional rights is alleged throughout the plaintiffs' complaint, such as the right to due process, equal protection of the laws, etc."

Plaintiffs' equal protection allegations are inadequate, as discussed above. Similarly, plaintiffs' due process allegations are inadequate, for the Civil Rights Acts and the Constitution do not provide a federal forum for review of state court proceedings. *Droppleman v. Horsley,* 372 F.2d 249, 251 (10th Cir. 1967); *Hurlburt v. Graham,* 323 F.2d 723, 725 (6th Cir. 1963); *Skolnick v. Spolar,* 317 F.2d 857, 859 (7th Cir.), cert. den. 375 U.S. 904, 84 S.Ct. 195, 11 L.Ed.2d 145, reh. den. 375 U.S. 960, 84 S.Ct. 439, 11 L.Ed.2d 318 (1963); *Moffett v. Commerce Trust Co.,* 187 F.2d 242, 248, 249 (8th Cir. 1951); *Bottone v. Lindsley,* 170 F.2d 705, 707 (10th Cir. 1948); *Smith v. Sinclair,* 424 F.Supp. 1108, 1111 (W.D.Okl.1976); *Gill v. Gill,* 412 F.Supp. 1153, 1157 (E.D.Pa.1976); *Surowitz v. New York City Employees' Retirement System,* 376 F.Supp. 369, 373 (S.D.N.Y.1974); *Boles v. Bank of Knoxville,* 306 F.Supp. 13, 16 (E.D.Tenn.1969).

█ Plaintiffs' attempt to transform state court litigation into federal civil rights causes of action via conclusory allegations will fail. The "Civil Rights Act cannot be used as a jurisdictional subterfuge for traditional lawsuits." *Sanders v. Independent Sch. Dist. No. I–2, of Kiowa Co., Okl.,* 459 F.2d 51, 52 (10th Cir. 1972). Not every tort or wrong constitutes a violation of a civil right. *Atkins v. Lanning,* 556 F.2d 485, 489 (10th Cir. 1977); *Wells v. Ward,* 470 F.2d 1185, 1187 (10th Cir. 1972); *Carter v. Chief of Police,* 437 F.2d 413, 415 (3d Cir. 1971) (unlawful detention of chattel).

Several additional contentions are contained in defendants' motions to dismiss but in light of the foregoing, they need not be discussed here.

IT IS THEREFORE ORDERED that plaintiffs' motion for leave to file an amended complaint be granted.

IT IS FURTHER ORDERED that this action be, and is hereby, dismissed.

### APPENDIX

The only specific factual allegations appearing in plaintiffs' complaint are con-

tained in Paragraph # 8, and read as follows:

a) When the driver of the delivery truck, one Walter Griffin, employed by defendants Fisher and Capital City Moving & Storage, returned from delivery of plaintiffs' goods to plaintiffs and reported to defendants that 8 or 10 of the cartons or boxes containing plaintiffs' goods was missing from the shipment, said defendants ordered Griffin to remain silent about such missing cartons.

b) Said defendants did thereupon alter the records and inventory sheets returned by Griffin and showing thereon that such cartons were in fact missing, and by altering same and adding "X's" at appropriate places on said inventory sheets these said defendants thereby tampered with evidence, introduced said sheets at the trial of plaintiffs' said court suit in a wrongful and unlawful effort to pursuade [sic] the said court that none of plaintiffs' goods were missing at all.

c) Said defendants did thereupon agree among themselves to commit perjury at said trial by testifying that said inventory sheets were thus marked with said "X's" by Griffin, signifying that no cartons were in fact missing, but that nobody among these defendants knew the whereabouts of Walter Griffin; and all the named defendants did agree in the fabrication of such network of lies and deceit; and all such defendants did go forward with such conspiracy to testify and cause to be testified these things in said trial on days certain during the weeks generally of May 23 and 30, 1977.

d) Defendants Davis, Unrein and Hummer are attorneys who at all times relevant hereto did represent the other defendants in said court suit, and who, together with the defendant Dennis Phelps (law clerk for said attorneys), entered said conspiracy with the other defendants by knowingly presenting such perjured testimony and evidence at said trial, and by actively working with their said clients to suppress evidence helpful to plaintiffs in said case.

e) Defendant Dennis Phelps, as agent for the other defendants, at times certain within the past six months, appeared at the home of the said Walter Griffin for purposes of corrupting his testimony and by improper and unlawful coercion, securing Griffin's signature to a false statement, knowing same to be false, by saying words substantially as follows to Griffin: "Nothing will ever come of this. You will never have to go to court, and if you do we will take care of you. Phillips (this plaintiff) is trying to defraud Kay (the defendant Katherine Fisher), and by signing this statement you will be doing her a favor. We have got the case won anyway. If you do have to testify, after it's over we will take you and your wife out to dinner, and if you testify the right way we'll make it worth your while."

f) Thereafter, when defendants learned that plaintiffs had located Griffin, and it appeared that Griffin would be going to court to testify, and that he was going to tell the truth about the missing cartons and the added "X's", defendants threatened Griffin with "trouble" and retaliation if he did so, promised him rewards including free legal services if he would not do so.

g) Defendants Thurnes (husband and wife over-the-road drivers for defendant Bekins) hauled plaintiffs' said goods from California to Topeka and unloaded same at defendant Capital's warehouse where defendant Barnes as a warehouse foreman had the duty to check each item as it was unloaded and entered said warehouse; in fact Barnes did not check each item, because Thurnes (husband) by prearrangement with his said wife took Barnes for "coffee" while said wife manipulated the inventory sheets so that all items appearing thereon were accounted for with appropriate "X's" even though the items themselves and the cartons belonging to plaintiffs were missing.

h) Although defendants have known the truth of all these things, they nevertheless conspired and agreed among themselves to fabricate a network of lies, rehearse themselves, conceal evidence,

tamper with exhibits, subborn [sic] to perjury, threaten witnesses, and otherwise impede, hinder, obstruct, and defeat the due course of justice in said state court suit.