# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3389

_____

| | | |
|---|---|---|
| George Hedges, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| George Randy Poletis, | * | District of Missouri |
| | * | |
| Appellee. | * | |

_____

Submitted: March 12, 1999
Filed: June 3, 1999

_____

Before McMILLIAN, MORRIS SHEPPARD ARNOLD, Circuit Judges, and NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

George Hedges appeals the district court's[2] grant of summary judgment to appellee George Randy Poletis wherein the court held that Poletis is entitled to qualified immunity for his role in the civil commitment of Mr. Hedges.  We affirm.

_____

[1]The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The HONORABLE FERNANDO J. GAITAN, JR., United States District Judge for the Western District of Missouri.

# I. BACKGROUND

George Hedges, a 52 year old homosexual male and resident of Lake Lotawana, Missouri, was involuntarily committed to a mental institution on August 18, 1995, in part due to the involvement of the Lake Lotawana chief of police, George Poletis. At the time, Hedges and his neighbors, James and Dorothy Snodgrass, were engaged in an ongoing neighborhood feud. Lake Lotawana police were aware of the situation as both parties made frequent calls reporting one another for alleged nuisances. Appellant's App. at 92-93, 109-113, 149.

Poletis became the police chief of Lake Lotawana, Missouri in May 1995. Id. at 310. Soon thereafter, the mayor received a letter from Hedges concerning the feud. Enclosed with that letter was a copy of a letter written by Hedges' psychiatrist, Dr. Mark Prochaska. Id. at 104-107. The doctor's letter indicated that Hedges suffered from anxiety, major depression, and obsessive compulsive personality disorder, that he was taking numerous psychotropic medications, and that he had purchased a firearm for self-protection. Id. at 105.

The mayor passed the letter to Poletis and directed him to pull all reports regarding the dispute between Hedges and the Snodgrasses. Id. at 95. Poletis reviewed nine police reports, letters written by Hedges to the former mayor, and memoranda written by the officers most familiar with the situation. Id. at 92-93, 108-13, 144, 148-49. The general impression of the reporting officers was that Hedges was potentially dangerous. Id. at 92-93, 109-13. However, Poletis did not think that probable cause existed at that time for emergency involuntary commitment. Accordingly, he referred the matter for investigation to Western Missouri Mental Health Center. Appellant's App. at 155, 311.

Thomas Wells, a mental health coordinator, handled the investigation. Id. at 85. After discovering that Hedges had made no current threats against anyone, Wells decided to close the case on August 3, 1995, without notifying Poletis. Id. at 78-80, 311. Poletis called Wells on August 8, 1995 to report that Hedges had regressed and had been seen beating himself and threatening a neighbor. Id. at 178, 311. On August 17, 1995, Wells interviewed a female neighbor who stated that Hedges had been relatively calm for ten days. Id. at 179, 311. That evening, he received a call from a male neighbor asking him to continue the investigation. Id. The next morning, Wells received another call from a male indicating that police had recommended he and his family leave their dock so as not to be at risk of being shot by Hedges. Id. Wells contacted Poletis for affidavits. Poletis stated that he was aware of the situation and would obtain the affidavits. Id. at 180. Wells obtained affidavits from Poletis, two officers who had responded to Hedges' disturbance calls, and James Snodgrass, and subsequently applied for Hedges' involuntary commitment. Id. at 115-124, 311. The Jackson County Probate Court heard the evidence ex parte and ordered Hedges into custody on August 18, 1995. He was released from the mental health center on August 21, 1995. Id. at 114, 311.

Hedges filed suit against Poletis alleging claims for denial of due process and denial of equal protection in violation of 28 U.S.C. § 1983. Id. at 8-15. In particular, Hedges alleged that Poletis deliberately provided false information to Wells and sought to commit Hedges because he was homosexual. Id. at 312. Summary judgment was granted in favor of Poletis on the issue of qualified immunity on August 25, 1998. Id. at 310-22.

## II. DISCUSSION

The Court reviews *de novo* the district court's grant of summary judgment. Burk v. Beene, 948 F.2d 489, 492 (8th Cir. 1991). When evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving

3

party and refrain from assessing credibility.  Miller v. Nat'l Cas. Co., 61 F.3d 627, 628 (8th Cir. 1995).  The non-moving party, however, may not simply rest upon the pleadings, but must point to evidence in the record sufficient to raise a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S. Ct. 2548, 2553; 91 L. Ed. 2d 265 (1986); Matthews v. Trilogy Communication, Inc., 143 F.3d 1160, 1163-64 (8th Cir. 1998).

Officials are entitled to qualified immunity only to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818; 102 S. Ct. 2727, 2738; 73 L. Ed. 2d 396 (1982).  The standard is one of objective reasonableness, and amounts to whether, in August 1995, Poletis knew or reasonably should have known his conduct violated a clearly established right.  Harlow, 457 U.S. at 818-19; 102 S. Ct. at 2738; 73 L. Ed. 2d 396; Anderson v. Creighton, 483 U.S. 635, 639; 107 S. Ct. 3034, 3038-39; 97 L. Ed. 2d 396 (1987).  Therefore, the first step in the analysis must be to determine whether Hedges had a clearly established statutory or constitutional right.  In Anderson v. Creighton, 483 U.S. 635, 640; 107 S. Ct. 3034, 3039; 97 L. Ed. 2d 396 (1987), the Supreme Court stated that, in order for a person to have a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Also, if the official can show "extraordinary circumstances" and can demonstrate that the law defining the violation was unknown and unknowable, he will be entitled to immunity for his actions.  Harlow, 457 U.S. at 819; 102 S. Ct. 2727, 2738; 73 L. Ed. 2d 396; Slone v. Herman, 983 F.2d 107, 109 (8th Cir. 1993).

**A.  Due Process Claim**

Hedges had clearly established due process rights.   If Poletis lied in order to convince the mental health investigator to begin commitment proceedings, then his conduct violated a clearly established constitutional right because it is clearly

4

established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause. Ricciuti v. N.Y.C. Transit Auth. et al., 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence [a factfinder's] decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial . . . ."); Stemler v. City of Florence, 126 F.3d 856, 872 (6th Cir. 1997) ("Under law that was clearly established in 1994, [the officer] would have violated [the § 1983 plaintiff's] right to due process if he knowingly fabricated evidence against her, and if there is a reasonable likelihood that the false evidence could have affected the judgment of the jury." (citations omitted)); Burk v. Beene, 948 F.2d 489, 494 (8th Cir. 1991).

Poletis cites Harris v. Pirch, 677 F.2d 681, 686 (8th Cir. 1982), for the proposition that "when a court evaluates police conduct relating to an arrest, its guideline is good faith and probable cause." However, a defendant's good faith or bad faith is irrelevant to the qualified immunity inquiry. Instead, as noted above, the standard is one of "objective reasonableness." Malley v. Briggs, 475 U.S. 335, 344; 106 S. Ct. 1092, 1097-98; 89 L. Ed. 2d 271 (1986). In testing the "objective reasonableness" of Poletis' actions, the "question ... is whether a reasonably well-trained officer in [Poletis'] position" would have known that his statement, if false, failed to establish probable cause and that he should not have turned it over to the mental health investigator. Malley, 475 U.S. at 345; 106 S. Ct. at 1098; 89 L. Ed. 2d 271 (footnote omitted). While Poletis' statements on their face may have established probable cause to have Hedges committed, if material information in the statement was known by him to be false, or if he had no reasonable basis for believing it, then it was not objectively reasonable for him to use it to convince the mental health coordinator to begin the commitment process. Burk v. Beene, 948 F.2d 489, 494 (8th Cir. 1991).

Thus, the case turns on whether Hedges provided sufficient evidence to create a material issue of fact as to the truthfulness of Poletis. Appellee asserts, and the district court found, Appellant's App. at 315, that there was no evidence that Poletis'

statements[3] to the mental health investigator were false. Appellant's contention that Poletis knowingly communicated false information to the mental health investigator, is not supported by the evidence in the record.

Poletis' August 8th statement was supported by an affidavit signed by Snodgrass on August 9, 1995, Appellant's App. at 119-21, and by a police report by Officer Luzier signed on August 4, 1995, id. at 122-23. Appellant's bare assertions that this statement was false is not sufficient to create a genuine issue of material fact on the issue. Celotex Corp., 477 U.S. at 324; 106 S. Ct. at 2553; 91 L. Ed. 2d 265. The August 18th comment cannot be verified. However, the only proof proffered by Hedges that this statement is false is the fact that no officer testified in a deposition that the alleged dock incident occurred. Appellant's Br. at 9-10. Drawing all reasonable inferences in favor of Hedges, this merely suggests that Snodgrass was lying about being warned to get off his dock and not that Poletis lied when he communicated his awareness of the situation to the mental health investigator. Indeed, given the multitude of prior incidents in the police reports concerning Hedges, and the fact that many officers were worried about Hedges and considered him a danger to the Snodgrasses, it seems logical that Poletis would have believed Snodgrass was telling the truth and would have supplied that information to the investigator. Officers Luzier, Schulze, and others wrote reports showing an increasing irrationality on the part of Mr. Hedges, beginning in about February of 1995. Appellant's App. at 126-34. In the context of these reports, it seems that a reasonable officer in Poletis' situation would have believed Hedges to be dangerous and would have communicated that belief to the

---

[3]Hedges points to the two statements made by Poletis after the commitment investigation was closed which caused the investigator to reopen the case: the statement of August 8, 1995, wherein Poletis told the investigator that Hedges made threats toward a neighbor and the statement of August 18, 1995,wherein Poletis stated that he was aware of the alleged dock incident and would get affidavits. Hedges contends that Poletis knew these statements were false at the time he communicated them to the mental health investigator.

mental health investigator. Accordingly, because there is no evidence, other than Hedges' own bare assertions, that Poletis lied and since a reasonable officer in Poletis' position would have believed Hedges to be dangerous, Poletis is entitled to qualified immunity on the due process claim.

## B. Equal Protection Claim

Hedges had a clearly established right to equal protection, in that it is unlawful for state officials to discriminatorily enforce the laws against a disfavored class of persons solely on the basis of their membership in that class. Snowden v. Hughes, 321 U.S. 1, 8; 64 S. Ct. 397, 401; 88 L. Ed. 497 (1944). In order to prove unlawful discrimination, Hedges need not prove that he is a member of a "suspect classification." Batra v. Board of Regents of Univ. of Neb., 79 F.3d 717, 721 (8th Cir. 1996). However, the discrimination must be intentional, and the government's motive must fail to comport with the requirements of equal protection. Id.

Both the district court and the parties spend a great deal of time discussing proof of Poletis' motive. Hedges points to the fact that it was generally well-known in Lake Lotawana that Hedges was homosexual, and thus Poletis must have known about it too. Appellant's App. at 204, 211, 233. Additionally, some officers testified that they remember discussing the issue with Poletis. Id. However, mere knowledge that Hedges was a member of disfavored class is not enough to prove intentional discrimination. Batra, 79 F.3d 717, 721 ("[T]he relevant prerequisite is unlawful discrimination, not whether plaintiff is part of a victimized class."); Phillips v. Fisher, 445 F. Supp. 552, 556 (D. Kan. 1977) ("The mere fact that plaintiffs are [members of a disfavored group] does not automatically entitle them to claim that anything that has happened to them has happened because they are [members of that group].").

Even drawing all inferences in favor of Hedges, the evidence supports the inference that Poletis was motivated more from the fact that he believed Hedges to be

7

dangerous than from the fact that he was a homosexual. Several officers had expressed concern that Hedges was dangerous, and some had even seen Hedges with his gun. Appellant's App. at 109-18. The evidence available to Poletis supported his conclusion that Hedges was the potentially dangerous party in the neighborhood dispute. Accordingly, because there is no evidence, apart from Hedges' bare assertions, that Poletis intentionally discriminated against Hedges because of his homosexuality, Poletis is entitled to qualified immunity on this claim as well.

Appellant also raises the argument that the district court improperly assessed the credibility of the witnesses, particularly Poletis, in granting summary judgment. Because appellant did not provide sufficient evidence to create a genuine issue of material fact concerning Poletis' credibility, the district court properly granted summary judgment in this case.

## III. CONCLUSION

Finding the district court properly granted summary judgment on the issue of qualified immunity, we hereby affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

8