Matthew H. FLEEGER, an
individual, Plaintiff,

v.

Stewart L. BELL, Clark County District
Attorney; Scott Doyle, Douglas County
District Attorney; and Desert Palace, Inc. dba Caesars Palace, a corporation, Defendants.

No. CV–S–99–1565–PMP(RJJ).

United States District Court,
D. Nevada.

April 12, 2000.

Richard I. Fine, Los Angeles, CA, Robert L. Langford, Walton & Langford, Las Vegas, NV, for plaintiff.

Ivan L. Kallick, Diane L. Faber, Manatt, Phelps & Phillips, LLP, Los Angeles, CA, Scott M. Mahoney, Las Vegas, NV, for Desert Palace, Inc.

Stephen C. Balkenbush, David P. Lane, Thorndal, Armstrong, Delk, Balkenbush & Eisinger, Reno, NV, for Douglas Co. DA, defendant.

Richard C. Maurer, Rawlings, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV, for Clark Co. DA, defendant.

### ORDER

PRO, District Judge.

Presently before this Court is Defendant Desert Palace, Inc.'s Motion to Dismiss First Amended Complaint (# 18) filed on January 24, 2000. Plaintiff Matthew Fleeger filed an Opposition (# 23) on February 18, 2000. Desert Palace, Inc. filed a Reply (# 22) on February 18, 2000.

## I. BACKGROUND

Defendant Desert Palace, Inc., dba Caesars Palace (hereinafter referred to as "Desert Palace") is a well-known provider of resort hotel and casino amenities. In order to better serve its gaming patrons, Desert Palace extends lines of gambling credit to those who fill out a pre-printed application form. This form requires specific information, such as a patron's name, home address, business address, telephone numbers, social security number, bank and bank account number. (Am.Compl.Ex.1.) Upon approval of this credit application by Desert Palace, a patron may request the issuance of certain instruments commonly known as casino "markers."

The markers, if signed by the patron, may in turn be used to obtain casino chips with which to gamble at a Desert Palace establishment. (Am.Compl.¶ 2.) Each marker identifies its value in United States dollars and bears the instruction "PAY TO THE ORDER OF." (Todd Decl.Ex. A.) The markers also bear the following stipulation:

I authorize the payee to complete any of the following items on this negotiable instrument: (1) any missing amounts; (2) a date; (3) the name, account number and/or address and branch of any bank or financial institution; and (4) any electronic encoding of the above items.

This information can be for any account from which I may in the future have the right to withdraw funds, regardless of whether that account now exists, of whether I provided the information on the account to the payee. I acknowledge that I incurred the debt evidenced by this instrument in Nevada. I agree that any dispute regarding or involving this instrument, the debt, or the payee shall be brought only in a court, state or federal, in Nevada. I hereby submit to the jurisdiction of any court, state or federal, in Nevada.

(Id.) According to Plaintiff Matthew Fleeger ("Fleeger"), spaces for information such as account number, bank address and bank branch are left blank on the marker at the time of execution. (Am. Compl.¶ 4.) When a patron is finished gambling, he either cashes out the markers (i.e., pays them off) or leaves the casino with the markers outstanding as a debt owed to Desert Palace.

On at least two occasions in November 1997 and January 1998, Fleeger executed several such markers with Desert Palace. (Todd Decl.Ex. A.) By April 1998, Fleeger had accumulated a debt of approximately $183,856.00 as reflected in unpaid markers owed to Desert Palace. (Am.Compl.¶ 43.) When Desert Palace attempted to deposit some of the markers reflecting this outstanding debt, however, they were returned by Fleeger's banks with the notations "NSF" and "Returned Not Paid." (Id. ¶¶ 4, 42; Todd Decl.Ex. A.) After sending a payment demand letter to Fleeger, Desert Palace requested Clark County District Attorney Stewart L. Bell and Douglas County District Attorney Scott Doyle ("the District Attorneys") to collect the debt as a "bad check" under Nev.Rev.Stat. § 205.130.[1] (Am.Compl.¶¶ 4, 36, 45.) The District Attorneys each filed criminal charges against Fleeger. Arrest warrants were issued therefrom in both Nevada and Texas, leading to Fleeger's eventual arrest and detention in both Dallas, Texas and Colin, Texas. (Id.¶¶ 47–48, 50.)

On November 4, 1999, Fleeger filed a Class Action Complaint (# 1) on behalf of himself and other similarly situated plaintiffs. Desert Palace filed a Motion to Dismiss the Class Action Complaint (# 6) for failure to state a claim on December 13, 1999. Instead of opposing this motion,

---

1. Nevada Revised Statute § 205.130 Issuance of check or draft without sufficient money or credit: Penalties.

1. Except as otherwise provided in this subsection and subsections 2 and 3, a person who willfully, with an intent to defraud, draws or passes a check or draft to obtain:
   (a) Money;
   (b) Delivery of other valuable property;
   (c) Services;
   (d) The use of property; or
   (e) Credit extended by any licensed gaming establishment, drawn upon any real or fictitious person, bank, firm, partnership, corporation or depositary, when the person has insufficient money, property or credit with the drawee of the instrument to pay it in full upon its presentation, is guilty of a misdemeanor. If that instrument, or a series of instruments passed in the state during a period of 90 days, is in the amount of $250 or more, the person is guilty of a category D felony and shall be punished as provided in [Nev.Rev.Stat. § ] 193.130. In addition to any other penalty, the court shall order the person to pay restitution.

2. A person who was previously convicted three times of a misdemeanor under the provisions of this section, or of an offense of a similar nature, in this state or any other state, or in a federal jurisdiction, who violates this section is guilty of a category D felony and shall be punished as provided in [Nev.Rev.Stat. § ] 193.130. In addition to any other penalty, the court shall order the person to pay restitution.

3. A person who willfully issues any check or draft for the payment of wages in excess of $250, when the person knows he has insufficient money or credit with the drawee of the instrument to pay the instrument in full upon presentation is guilty of a gross misdemeanor.

4. For the purposes of this section, "credit" means an arrangement or understanding with a person, firm, corporation, bank or depositary for the payment of a check or other instrument.

Fleeger filed the extant Amended Class Action Complaint (# 13) on January 5, 2000.[2]

In his Amended Complaint, Fleeger contends that the markers were not negotiable "checks" or "drafts" for purposes of Nevada gaming and commercial law, but rather IOU's or promissory notes. He therefore argues that Desert Palace's request to the District Attorneys to collect the unpaid markers and prosecute him and other debtors for passing bad checks lacked proper foundation in either Nevada or federal law. To this end, Fleeger has alleged that Desert Palace directly violated and/or conspired with the District Attorneys to violate: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o; (2) Nevada false arrest and false imprisonment laws; (3) substantive due process rights guaranteed by the Fourteenth Amendment of the United States Constitution; (4) 42 U.S.C. § 1983; and (5) Regulation 5.140 of the Nevada Gaming Commission and State Gaming Control Board. Desert Palace has moved to dismiss these allegations with prejudice for failure to state claims upon which relief can be granted. *See* Fed.R.Civ.Pro. 12(b)(6).

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner Broadcasting System, Inc.,* 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). The issue is not whether the plaintiff will ultimately prevail, but whether he may offer evidence in support of his claims. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

While a district court must normally ignore those matters that lie outside the pleadings, it may consider: (1) documents physically attached to the complaint, *see Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987); (2) documents of undisputed authenticity that are alleged or referenced within the complaint, *see Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994); and (3) public records and other judicially noticeable evidence, *see Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986). Thus, for the purposes of Desert Palace's Motion to Dismiss, this Court may reference the unredeemed casino markers and the pre-printed credit application form giving rise to this dispute.

## III. DISCUSSION

In his First Amended Complaint (# 13), Fleeger has asserted claims individually and on behalf of other similarly situated plaintiffs. (Am.Compl.¶ 21.) However, since the proposed class has not yet been certified, it is appropriate to consider only Fleeger's claims against Desert Palace at this time. This Court will consider each of Fleeger's causes of action *in seriatim.*

### A. First Cause of Action: Alleged Violation of FDCPA

At the outset, Desert Palace requests the dismissal of Fleeger's allegations that it violated the FDCPA both through (1) its individual acts and (2) its unlawful "conspiracy" with the District Attorneys. The FDCPA prevents "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Fleeger contends, in essence, that Desert Palace violated these provisions by demanding repayment of its

---

**2.** Pursuant to Local Rule 7.2(d), Defendant's original Motion to Dismiss (# 6) was granted by the Court on January 10, 2000, as a result of Plaintiff's failure to file an Opposition thereto (# 14).

markers under Nevada's bad check statute and referencing the matter to the local District Attorneys. (Am.Compl.¶ 77.) Neither allegation, however, is sustainable.

### 1. Direct FDCPA Liability

In order to assert direct liability under the FDCPA, a plaintiff must show that the defendant's actions or status rendered it a "debt collector" for purposes of the Act. *See Heintz v. Jenkins,* 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1513 (9th Cir.1994). Ordinarily, the FDCPA protects consumers against only those entities that collect debts for third parties. *See Romine v. Diversified Collection Servs., Inc.,* 155 F.3d 1142, 1146 (9th Cir.1998). The FDCPA does provide, however, that "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts" may also fall within the ambit of the term "debt collector." 15 U.S.C. § 1692a(6)(A). Nevertheless, examination of Fleeger's Complaint fails to unearth any allegations lying in conformity with these standards.

Here, Fleeger has conceded that the sums pursued by Desert Palace were for those monies owed to it as a result of gambling losses. (Am.Compl. ¶¶ 36, 43.) While it is true that Desert Palace conducts business under the name "Caesars Palace," nowhere does the Amended Complaint allege that it presented itself under any identity other than the "Caesars" moniker during the period of alleged malfeasance. (Am.Compl.Ex.1.) Indeed, the dishonored checks forming the basis of this suit are made payable to "Caesars Palace." (Todd Decl.Ex. A.) Similarly, Desert Palace's payment demand letters (Larry Gaddis Decl.Ex. A) and credit application form (Am.Compl.Ex.1) bear the "Caesars" name. Thus, this Court finds a complete absence of the necessary false suggestion of third-party debt collection

required by § 1692a(6)(A) to bar the self-help efforts of a creditor. The identical conclusion has been reached by at least one other district court. *See Friedman v. Rubinstein,* No. 97 C 6610, 1997 WL 757875, at *3 (N.D.Ill.Dec.1, 1997) ("In the [FDCPA] case at bar, the use of the name 'Caesars Palace' would not indicate that a third person was collecting or attempting to collect the gambling debt. Plaintiff incurred the debt with an entity using the name 'Caesars Palace,' so the use of that name by Desert Palace, Inc., would indicate that the original creditor, not some third party, was collecting or attempting to collect the debt."). Fleeger's allegations of direct liability against Desert Palace are therefore dismissed.

### 2. Conspiracy Liability Under the FDCPA

Similarly misplaced is any allegation of FDCPA conspiracy liability. Conspiracy liability can arise only when there is the commission of a wrongful, actionable tort. *See Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 208 (9th Cir.1991); *Eikelberger v. Tolotti,* 96 Nev. 525, 611 P.2d 1086, 1088 n. 1 (1980). In his Amended Complaint, Fleeger accuses Desert Palace of unlawfully conspiring with the District Attorneys to violate the FDCPA by "unfairly and unconscionably using the legal process" in order to force repayment of Desert Palace's markers. (Am.Compl.¶ 79.) However, the FDCPA specifically exempts from its field of regulated "debt collectors" any officer or employee of any state or its political subdivisions "to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C. § 1692a(6)(C); *see also Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260, 1263 (9th Cir.1996). Thus, FDCPA conspiracy liability may fall upon Desert Palace only insofar as the District Attorneys acted in contravention of their statutory or official duties.

Nevada's bad check legislation prohibits an individual from drawing or passing "a check or draft" to obtain services, money

or use of property "when the person has insufficient money, property or credit with the drawee of the instrument to pay it in full upon its presentation." NevRev.Stat. § 205.130(1). While the Nevada criminal codes are silent as to what instruments may constitute a "check," this Court may reference sections of Nevada's commercial law code for interpretive aid. *See* 2B Norman J. Singer, Sutherland Stat. Const. §§ 53.02–53.04 (5th ed.1992) (outlining theory of interpretive harmony in statutory systems). Under the Nevada Uniform Commercial Code, a "check" is defined as "[a] draft, other than a documentary draft, payable on demand and drawn on a bank." Nev.Rev.Stat. § 104.3104(6). A draft is "payable on demand" when no time for payment is otherwise stated. *See* Nev. Rev.Stat. § 104.3108.

Here, the markers referenced within Fleeger's Amended Complaint specifically state that the payor empowers Desert Palace to fill in the amount, name, account number and address of any financial institution in which the payor holds funds. (Todd Decl.Ex. A.) The markers also do not delineate any explicit dates for repayment, thereby subjecting the payor to a repayment obligation at the will of the payee. Thus, this Court finds the disputed casino markers to be negotiable "checks" for purposes of Nev.Rev.Stat. §§ 104.3104(6) and 205.130.[3] Any nonpayment of casino markers of the type provided by Desert Palace would therefore fall within the prosecutorial purview of the Nevada District Attorneys. Accordingly, Fleeger's FDCPA conspiracy claim will also be dismissed.[4]

**B. Second Cause of Action: False Imprisonment and False Arrest**

Desert Palace next requests dismissal of Fleeger's unauthorized detention allegations. In his second cause of action, Fleeger alleges that while Desert Palace did not itself detain his person, it did cause his unlawful arrest and jailing in Texas. (Am.Compl.¶¶ 49–50, 86). According to Fleeger, these acts violated state false imprisonment and false arrest laws. In Nevada, a false imprisonment is effected where there is a "confinement or detention [of another] without sufficient legal authority." Nev.Rev.Stat. § 200.460. An integral part of the proof of this tort is the commission or instigation of a false arrest (i.e., an unlawful arrest or restraint of personal liberty). *See Garton v. City of Reno*, 102 Nev. 313, 720 P.2d 1227, 1228 (1986) (quotation and citation omitted). As mentioned, *supra*, Fleeger's arrest and detention in Texas for the nonpayment of casino markers lay within the legal bounds of Nevada's bad check statute. The Court will therefore dismiss Fleeger's second cause of action insofar as it relates to Desert Palace.

**C. Third Cause of Action: Alleged Violation of the Fourteenth Amendment**

Fleeger's third cause of action alleges that Desert Palace both directly violated and conspired to violate Fleeger's Fourteenth Amendment right to substantive due process. A litigant, however, may not directly pursue a cause of action under the United States Constitution. *See Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992). Accordingly, this Court will also dismiss Fleeger's third cause of action.

**D. Fourth Cause Of Action: 42 U.S.C. § 1983**

In his fourth cause of action, Fleeger restates his due process allegation with-

---

3. At least one other court characterizing casino markers under an analogous state commercial code has reached a similar conclusion. *See TeleRecovery of Louisiana, Inc. v. Gaulon*, 738 So.2d 662, 666–67 (La.Ct.App. 1999) (applying Louisiana law).

4. Due to the aforementioned infirmities, the Court finds it unnecessary to reach Desert Palace's additional arguments under the absolute privilege and the Noerr–Pennington doctrines.

in the statutory vehicle of a 42 U.S.C. § 1983 claim. To maintain a § 1983 action, a plaintiff must show (1) that the conduct complained of was committed under color of state law and (2) that the conduct deprived the plaintiff of a constitutional right. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (citations omitted). Fleeger alleges that Desert Palace "acted under the color of [Nev.Rev.Stat.] § 205.130 in filing criminal charges against Plaintiff" and conspired to "caus[e] [his] arrest for 'passing bad checks,' even though the markers [were] not 'checks' or 'drafts.'" (Am. Compl.¶ 106.) Desert Palace correctly argues, however, that such allegations fail to state a violation of the federal civil rights laws.

As a general rule, conduct by private parties such as Desert Palace will not constitute governmental action under color of law for purposes of § 1983. *See Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826, 835 (9th Cir.1999); *Aasum v. Good Samaritan Hospital*, 542 F.2d 792, 794 (9th Cir.1976). Nevertheless, it is true that liability may arise in the special instance in which the private party willfully participates in joint action with state officials. *See Franklin v. Terr*, 201 F.3d 1098, 1100 (9th Cir.2000); *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir.1989). However, contrary to the suggestion extended in Fleeger's submissions, the mere reporting of suspected criminal activity to law enforcement officials does not constitute the type of joint action capable of transforming a private party into a state actor for purposes of § 1983. *See Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115–16 (10th Cir.1987); *see also Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir.1985) (finding no joint action liability where police officer made independent determination of probable cause to arrest on complaint sworn by private entity's general manager).

Nor is Fleeger's Amended Complaint saved by its conclusory allegations that Desert Palace "entered into a conspiracy and concert of action" with the District Attorneys to unlawfully collect unpaid markers as checks under Nev.Rev. Stat. § 205.130. (Am.Compl.¶¶ 40, 47.) Allegations of constitutional injury that are unsupported by specific facts may be properly disposed of through motions to dismiss. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989). Here, the Amended Complaint is bereft of the focused, requisite allegations of constitutional wrongdoing. Indeed, as mentioned, *supra*, the District Attorneys prosecution of the makers' nonpayment was completely proper under a facial reading of Nevada's bad check statute. Accordingly, Fleeger's fourth cause of action will be dismissed.

### E. Fifth Cause of Action: Regulation 5.140

In his fifth cause of action, Fleeger asserts that Desert Palace's reporting of marker nonpayment to the District Attorneys also violated Nevada Gaming Commission Regulation 5.140. This regulation states, in pertinent part, that:

1. Only bonded, duly licensed collection agencies, or a licensee's employees, junket representatives, attorneys, or affiliated or wholly-owned corporation and their employees, may collect, on the licensee's behalf and for any consideration, gaming credit extended by the licensee.

Nev. Gaming Comm'n Reg. 5.140(1). In order to best maintain the "strict and uniform regulation of all aspects of the gaming industry," courts should be loath to infer private causes of action under Nevada's gaming regulatory regime barring "express language to the contrary." *Sports Form, Inc. v. Leroy's Horse and Sports Place*, 108 Nev. 37, 823 P.2d 901, 903 (1992). Here, perusal of the debt collection regulations does not reveal the faintest suggestion of the presence of a judicial remedy. *See, e.g.,* Nev. Gaming

Comm'n Reg. 5.140(3) (requiring debt collection licensees to maintain records for state gaming board inspection). Accordingly, Fleeger's request for judicial relief from an alleged violation of Regulation 5.140 is also dismissed.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Desert Palace, Inc.'s Motion to Dismiss (# 18) is GRANTED. All causes of action asserted against Desert Palace, Inc. are DISMISSED.